PHILIP ALLEN *et al. vs.* BONDED MUNICIPAL CORPORATION.

DECEMBER 22, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

102

CAPOTOSTO, J. This is a bill in equity by the owners of certain real estate in the city of Providence to remove a cloud on title and to set aside a tax deed from the city to the respondent, a foreign corporation. After a hearing in the superior court on bill, answer and proof, a decree was entered denying and dismissing the bill. The cause is before us upon the complainants' appeal from this decree.

The bill is to a certain degree anomalous. It prays that the tax sale be declared void for failure to comply with the required statutory provisions in connection with the tax sale, and that the cloud on the complainants' title be removed by cancelling the tax deed to the respondent. It also prays that general laws 1923, chapter 60, sec. 3, under which the city of Providence levied the tax, be declared unconstitutional. This section, hereinafter referred to for convenience as sec. 3, reads as follows: "All property liable to taxation shall be assessed at its full and fair cash value."

The complainants contend that it violates sec. 2, of art. I of the constitution of Rhode Island, which declares that "the burdens of the state ought to be fairly distributed among its citizens"; that it conflicts with sec. 16, art. I of that same constitution, which provides that: "Private property shall not be taken for public use without just compensation"; and that it is in violation of the due process and equal protection clauses of the 14th amendment to the constitution of the United States.

In contending that sec. 3 is unconstitutional, counsel for the complainants argued that the term "full and fair cash value" is so uncertain and variable in meaning that it furnishes no definite standard in matters of taxation. The sum and substance of complainants' contention, as we understand it, is that the standard for taxation fixed by the statute is too vague and indefinite to be applied with any degree of certainty, and that therefore the tax burden cannot be distributed according to that standard with absolute equality among those affected by the tax. The argument on this point, though ingenious and well presented, is not sound.

Section 3 was originally passed by the legislature in January 1855 in the same language as it now stands. Since that time our cities and towns have raised the necessary revenue for their public purposes according to this standard, and as far as we are aware, its constitutionality has never been questioned in this court before the instant cause.

A law relating to taxation cannot be held to be unconstitutional upon general or uncertain expressions, but only upon plain restrictions. *Crafts* v. *Ray,* 22 R. I. 179, 186. In *Manufacturers Mutual Fire Ins. Co.* v. *Clarke,* 41 R. I. 277, where the power of the legislature to classify insurance companies for the purposes of taxation was under consideration, this court, at page 281 of the opinion, said: "An act of the General Assembly must stand unless its repugnancy to the constitution appears upon its face or upon a consideration of facts of which the court can take judicial notice." At any rate, both of these elements are absent in this cause.

We must assume that, in enacting the original statute and continuing it in force without change as sec. 3 to the present time, the legislature had knowledge that absolute equality in taxation was beyond human possibility, and that it did not intend to require that which is impossible to do. Article I, sec. 2 of the state constitution requires that the burdens of the state ought to be "fairly" distributed among its citizens. Undoubtedly attentive to the constitutional mandate and appreciating that it was dealing with a practical subject, the legislature selected a standard for taxation that it deemed most fair, and then proceeded to provide a statutory method which a taxpayer might pursue if he wished to protect himself against possible excessive taxation. As this court said in the *Clarke* case, *supra,* at page 280 of that opinion: "It is generally recognized that while the burden of taxation should be distributed fairly among the citizens, absolute fairness and equality is unattainable." See also *In re Dorrance Street,* 4 R. I. 230.

The term "full and fair cash value" has been construed by this court to mean the price that the property would probably bring in a transaction in a fair market between a willing seller and a willing buyer. *Aspegren* v. *Tax Assessors of City of Newport*, 125 A. 213 (R. I.). While it is true, as the complainants contend, that in applying the standard prescribed by sec. 3 and construed in the *Aspegren* case, honest men can reasonably disagree as to the valuation of property, yet the statute provides a method by which a taxpayer may protect himself against unfair valuation.

Real estate is not to escape taxation because of difficulty in fixing a standard of valuation which will result in absolute fairness in all instances. After all, the persons most qualified to say whether a given standard is fair as a practical matter are the taxpayers themselves, acting through their authorized representatives in the legislature. In 1855 the legislature selected as a standard the "full and fair cash value" of taxable property, and our taxpayers have accepted such standard ever since that time.

The constitutional requirement of fairness in taxation is met if a taxing law demands that it be applied with substantial uniformity without discrimination throughout a class of property set apart for separate taxation. The weight of authority supporting this fundamental principle in the law of taxation is so overwhelming as to make the citation of cases unnecessary. The statute now under consideration, which has received the approval of our citizens for eighty-three years, fully meets this constitutional requirement.

We are, therefore, clearly of the opinion that G. L. 1923, chap. 60, sec. 3 is constitutional and does not violate art. I, sec. 2, or art. I, sec. 16 of the constitution of Rhode Island, or the 14th amendment to the constitution of the United States.

The second aspect of this cause concerns questions raised by the complainants in connection with a constitutional statute. Those questions refer to alleged noncompliance with statutory provisions in the collection of a *legal* tax.

One ground of error urged by the complainants is the sustaining of a demurrer to certain paragraphs of their original bill. They claim that this ruling prevented them from proving the illegality of the tax under which their property was sold.

We agree with the complainants that the procedure in this instance was clearly erroneous. A demurrer to one or more paragraphs in a bill is not permissible under our well-established equity practice. Impertinent or scandalous matter in a bill may be eliminated by a motion to strike out such matter. However, the complainants are not prejudiced by the clear error in equity procedure that we find in this cause, as the legality of the tax which resulted in the sale of their property was necessarily involved in the constitutional question that we have just decided.

The complainants contend that the sale of their property for delinquent taxes to the respondent is invalid for the following reasons. First, it was a sale to a foreign corporation which, at the time of the sale, had not complied with G. L. 1923, chap. 248, sec. 64; second, it was a sale on credit and not for cash, as allegedly required by G. L. 1923, chap. 62, sec. 16; and third, the tax collector did not deliver a tax deed to the respondent within ten days after the sale, in alleged violation of said sec. 16.

The bill of complaint does not set forth the necessary allegations to properly raise these questions before us. It does not recite or contain a tender or offer to pay the amount of the legal tax and interest which was payable to the city at the time of sale, which amount the complainants were in justice and good conscience legally bound to pay.

In the instant cause we are dealing with a legal tax and not with an illegal one. It is well established by the great weight of authority that in granting affirmative relief against the holder of a tax title because of an alleged void sale under a legal tax by way of cancellation of a tax deed or quieting title to the land, equity requires that, before

such relief is granted, the one against whom the tax was assessed must reimburse the tax titleholder for all legal taxes, with interest, paid by such titleholder. *Allen & Reed, Inc.* v. *Investments, Inc.,* 57 R. I. 457; *McGuigan* v. *Fitzpatrick,* 60 R. I. 490, 199 A. 448. See also 55 L. R. A. (1915 C) 492.

The familiar maxim in equity that he who seeks equity must do equity is clearly applicable in the circumstances before us. Because of alleged error in connection with a tax sale under a legal tax, the complainants virtually seek to relieve themselves of their just share of taxes at the expense of an innocent purchaser at such sale. While the real estate in question was owned by the complainants, they were bound to pay the legal taxes assessed against it, and they should have paid those taxes without forcing the city to a sale of that real estate for delinquent taxes. Furthermore, the respondent in this cause is not asking for any affirmative relief. It would be clearly inequitable to allow the complainants to prevail under this bill.

For the reasons stated, the complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Russell W. Richmond,* for complainants.
*Lisker, Sullivan & Lisker,* for respondent.