Fred A. GOTT, Jr. and Rhode Island Hospital Trust Co., Executors of the Estate of Rathbun Willard

v.

John H. NORBERG, Tax Administrator.

No. 77–436–M.P.

Supreme Court of Rhode Island.

July 8, 1980.

Reargument Denied Aug. 28, 1980.

Armstrong, Gibbons, Lodge & Kinder, Walter F. Gibbons, Providence, for plaintiffs-respondents.

Dennis J. Roberts, II, Atty. Gen., Perry Shatkin, Chief Legal Officer (Taxation), Providence, for defendant-petitioner.

## OPINION

MURRAY, Justice.

The defendant Tax Administrator (administrator) filed a petition for certiorari pursuant to G.L. 1956 (1977 Reenactment) § 42–35–16, seeking review of a Superior Court judgment ordering him to pay 8-percent annual interest on estate tax overpayments refunded to the plaintiffs (taxpayers). We issued the writ and have the pertinent records before us.

This controversy arose after an assessor for the state Division of Taxation assessed $55,000 in taxes and interest on the residuary legacy contained in Rathbun Willard's will. The assessor, acting pursuant to G.L. 1956 (1970 Reenactment) § 44–22–1(a), levied a 2-percent deferred enjoyment tax on the legacy because a will contest postponed its transfer to the Watch Tower Bible and Tract Society of Pennsylvania, Inc., the legatee. The assessor did not impose a 1-percent estate tax under § 44–22–1(a) or a transfer tax under § 44–22–7 because he

determined the legatee was a religious organization exempted from those taxes by §§ 44–22–1(b) and 44–22–11(1), respectively.

The taxpayers, as executors of Mr. Willard's estate, contested the assessment in an administrative hearing. They maintained that, if §§ 44–22–1(b) and 44–22–11(1) exempted the legacy from the estate and transfer taxes, it also exempted the legacy from the 2-percent tax imposed by the assessor. After the hearing, the administrator reversed the assessor's action in part. He agreed with the taxpayers that entities exempt from transfer taxes are also exempt from the 2-percent tax. However, he then determined that the legatee was not an exempt organization for purposes of §§ 44–22–1(b) and 44–22–11(1). In his "Final Decision," the administrator therefore levied an additional $200,000 as estate and transfer taxes under §§ 44–22–1(a) and 44–22–7. The taxpayers paid all sums under protest.

▋ They then sought judicial review of the administrator's decision in Superior Court under § 42–35–15.[1] Prior to hearing, however, the administrator stipulated to a judgment that the legatee was an exempt organization and refunded all the taxes collected without interest. The taxpayers pursued the question of interest in their appeal to the Superior Court. The reviewing justice agreed with the taxpayers and awarded them 8-percent annual interest accruing from the date of collection to the date of refund.

The Superior Court justice based his award on two independent statutory grounds. He relied on what he termed "fundamental fairness" to award interest, although the applicable refund statutes are silent concerning interest. He also determined that the appeal constituted a civil action within the meaning of G.L. 1956 (1969 Reenactment) § 9–21–10, as amended

---

1. We note that G.L. 1956 (1970 Reenactment) § 44–23–33, as amended by P.L. 1976, ch. 140, § 29, provides that after October 1, 1976, parties seeking abatement of estate and transfer taxes must file a complaint in the Sixth Division of the District Court. The taxpayers commenced this action on June 28, 1976; the jurisdiction of the Superior Court was therefore unaffected by the revision of § 44–23–33.

by P.L. 1977, ch. 10, § 1,[2] and that the taxpayers were therefore entitled to interest in accordance with § 9–21–10.

## I.

■ Title 44 of the General Laws of 1956 (1970 Reenactment) constitutes a comprehensive scheme of taxation. It is the intention of the Legislature to have all statutes that relate to taxation construed consistently with one another and to effectuate the policy of the law. *The Herald Press, Inc. v. Norberg*, R.I., 405 A.2d 1171, 1176 (1979); *Estate of Wickes v. Stein*, 107 R.I. 260, 267, 266 A.2d 911, 915 (1970).

Our survey of title 44 reveals numerous provisions for refunding taxes. Those statutes reflect considered legislative judgment on the subject of interest. A number of statutes provide for interest at specified rates to be paid on refunded taxes.[3] Several provisions are silent on the matter of interest.[4] Still others provide for interest without naming a specific rate.[5] The taxpayers sought redress under statutes providing for refunds of estate and transfer taxes. Those statutes are silent on the payment of interest on tax refunds.

■ We must give effect to ascertainable legislative intent whenever it is within legislative competence. *Vaudreuil v. Nelson Engineering and Construction Co.*, R.I., 399 A.2d 1220 (1979). In *Daniels Tobacco Co. v. Norberg*, 114 R.I. 502, 335 A.2d 636 (1975), we determined that the Legislature

intended to deny interest on cigarette-tax refunds in the absence of an express provision. The *Daniels* plaintiff received a refund of taxes paid on cigarettes. It argued that a repealed statute, allowing interest on tobacco-product tax refunds, was the direct predecessor of the statute under which the plaintiff had received the refund of cigarette taxes. The plaintiff reasoned that the cigarette-tax-refund statute implicitly incorporated the interest provision of the repealed statute. We rejected the plaintiffs' contention, finding that the repealed statute applied "only to taxes assessed on tobacco products and not on cigarettes, and that consequently no legislative intent [had] ever been evidenced to award interest on refunds of a cigarette tax * * *." *Id.* at 507, 335 A.2d at 639. We determined that the Legislature's failure to provide for interest specifically on cigarette-tax refunds evidenced intent to deny interest on such refunds. *Id.* We perceive a similar legislative intent with respect to estate- and transfer-tax refunds.

■ Thus, the Superior Court justice erred to the extent that he relied on "fundamental fairness" to justify the statutory interest award. In effect, the justice inferred an interest provision to achieve a just result in this controversy. However, the judiciary cannot broaden a statute through interpretation unless the clear purpose of the legislation would fail without the implication. *Coastal Finance Corp. v.*

---

2. General Laws 1956 (1969 Reenactment) § 9–21–10, as amended by P.L. 1977, ch. 10, § 1, provides:

    "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of eight percent (8%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. This section shall not apply until entry of judgment or to any [contractual] obligation where interest is already provided or as to any condemnation action."

3. The following statutes provide for refunds with 6-percent interest G.L. 1956 (1970 Reenactment):

    § 44–11–20 (business corporation tax); § 44–13–32 (public service corporation tax); § 44–

14–36 (taxation of banks); § 44–15–15 (taxation of bank deposits); § 44–17–5 (taxation of insurance companies); and § 44–30–88 (personal income tax). Section 44–29–13 provides for 7-percent interest on refunds on overpayments for the admissions tax to racing events.

4. General Laws of 1956 (1970 Reenactment):

    § 44–19–26 (sales and use taxes); § 44–20–49 (cigarette taxes); § 44–22–24, § 44–22–25, § 44–23–33 (estate and transfer taxes); and § 44–24–16 (gift taxes).

5. General Laws 1956 (1970 Reenactment) §§ 44–5–30 and 44–5–31 provide for refunds of local taxes "with interest from the date on which said tax and penalty were paid * *."

*Coastal Finance Corp. of North Providence, R.I.*, 387 A.2d 1373, 1378 (1978); *New England Die Co. v. General Products Co.*, 92 R.I. 292, 298, 168 A.2d 150, 154 (1961). Finding no failure of the evident legislative purpose to authorize refunds, we determine that the statutory inequity perceived by the reviewing justice must be redressed by the Legislature, not by the judiciary.

## II.

The Superior Court justice also construed § 9–21–10 to supply statutory authority to award interest in this case. We disagree because the words "civil action" in § 9–21–10 do not encompass appeals to the Superior Court from decisions of the administrator.

Prior to 1976 § 9–21–10 provided for interest only "[i]n causes of action and actions for damages to the person or to real and personal estate in which verdict is rendered or a decision made for pecuniary damages * * *." Section 9–21–10, as amended by P.L. 1966, ch. 1, § 10. We interpreted that language to exclude from the operation of § 9–21–10, contract actions, *Rhode Island Dairy Queen, Inc. v. Burke*, 101 R.I. 644, 226 A.2d 420 (1967), condemnation actions, *Isserlis v. Director of Public Works*, 111 R.I. 164, 300 A.2d 273 (1973), actions for breach of implied warranty, *Casavant v. Campopiano*, 114 R.I. 24, 327 A.2d 831 (1974), and actions for alienation of affection and criminal conversation, *Bailey v. Huling*, R.I., 377 A.2d 220 (1977).

The taxpayers in support of the interest award rely on the 1976 amendment to § 9–21–10 substituting the words "any civil action" [6] for the phrases "causes of action" and "actions for damages to the person or to real and personal estate." Section 9–21–10, as amended by P.L. 1976, ch. 146, § 1. They contend that the Legislature intended thereby to expand the scope of § 9–21–10.

We construe statutes that award interest on judgments strictly. *Atlantic Refining Co. v. Director of Public Works*, 104 R.I. 436, 244 A.2d 853 (1968). Applying the rule of strict construction, we discern legislative intent to effect a more limited change. In *Casavant v. Campopiano*, and *Rhode Island Dairy Queen, Inc. v. Burke*, both *supra*, we denied recovery of interest because § 9–21–10 did not encompass actions sounding in contract. The Legislature responded with the addition of the words "civil action" in 1976. In light of the litigated history of § 9–21–10, we find that the Legislature intended to equalize the right of tort and contract litigants to collect interest on judgments. We conclude, therefore, that the Legislature did not intend to provide for interest on tax refunds awarded upon review of administrative proceedings when it amended § 9–21–10 in 1976.

## III.

In the absence of statutory authorization, the taxpayers point to the Rhode Island Constitution to support the award of interest.[7] They characterize the collection of

---

**6.** Although not dispositive of legislative intent with respect to G.L. 1956 (1969 Reenactment) § 9–21–10, as amended by P.L. 1977, ch. 10, § 1, we held previously that administrative appeals are not civil actions within the meaning of the Rules of Civil Procedure. *Notre Dame Cemetery v. Rhode Island State Labor Relations Board*, 118 R.I. 336, 373 A.2d 1194 (1977).

**7.** We note that the taxpayers advanced their constitutional claims initially in the complaint filed in the Superior Court. The reviewing justice, however, based his decision to award interest on statute. Thus, the administrator, when challenging the Superior Court's judgment in his petition for certiorari, did not address the taxpayers' constitutional contention. In this court, the taxpayers, as respondents to the administrator's petition, renewed their

claim for interest under the Rhode Island Constitution as an alternative basis for the Superior Court judgment.

The administrator petitioned for certiorari pursuant to G.L. 1956 (1977 Reenactment) § 42–35–16. Section 42–35–16 provides in pertinent part:

"Any party in interest, if aggrieved by a final judgment of the superior or district court * * * may * * * petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved. The petition for a writ of certiorari shall set forth the errors claimed."

We originally considered the scope of review under § 42–35–16 in *Providence Journal Co. v. Mason*, 116 R.I. 614, 620, 359 A.2d 682, 685 (1976). We there interpreted the scope of re-

estate and transfer taxes on decedent's legacy to the Watch Tower Bible and Tract Society of Pennsylvania as a taking within the meaning of art. I, sec. 16 of the Rhode Island Constitution.[8] The taxpayers contend that the administrator arbitrarily levied the tax on property specifically exempted from taxation by the Legislature. They characterize his action as an appropriation of private property requiring "just compensation." They then reason that the just compensation clause of art. I, sec. 16 mandates the interest award.

### A.

■ The majority of our cases arising under art. I, sec. 16 concern condemnation of real property. Condemnation of land involves public appropriation of real property that exceeds the owner's fair share of the state's needs. The state must therefore provide just compensation to the individual for the appropriated property. *Opinion of the Justices of the Supreme Court to the Governor in the Matter of the Metropolitan Park Loan*, 34 R.I. 191, 83 A. 3 (1912).

We have stated, however, that art. I, sec. 16 protects taxpayers from illegal exercise of the taxing authority. " 'The clause of the constitution requiring compensation to be made when private property is taken for public use is not a limitation on the taxing power, but it is held to guard against illegal exactions disguised under the name of taxation.' " *Id.* at 198, 83 A. at 6, (quoting from 27 *American and English Encyclopedia of Law* 585 (2d ed. 1904)), quoted in *Manning v. Board of Tax Commissioners*, 46 R.I. 400, 413, 127 A. 865, 871 (1925); *see Wood v.*

*Quimby*, 20 R.I. 482, 40 A. 161 (1898). We also noted in *Opinion of the Justices*, 34 R.I. at 198, 83 A. at 6, that the state's power to tax and its right of eminent domain " 'rest on substantially the same foundation * * both are exercises of the sovereign power to take private property for public use.' " A lawful exercise of the taxing power in effect prescribes each taxpayer's fair share of the state's financial obligations. As compensation, the taxpayer receives the services, benefits, and protections of government. *Wood v. Quimby*, 20 R.I. at 490–92, 40 A. at 164–65.

■ The Legislature possesses broad powers to select and classify the subjects of taxation. *Allen v. Bonded Municipal Corp.*, 62 R.I. 101, 4 A.2d 249 (1938); *Manning v. Board of Tax Commissioners, supra.* *See Burrillville Racing Association v. State*, 118 R.I. 154, 159–60, 372 A.2d 979, 983 (1977). Included in those powers is the power to select subjects to exempt from taxation. *General Finance Corp. v. Archetto*, 93 R.I. 392, 176 A.2d 73 (1961), *appeal dismissed*, 369 U.S. 423, 82 S.Ct. 879, 8 L.Ed.2d 6 (1962); *Ramsden v. Ford*, 88 R.I. 144, 143 A.2d 697 (1958); *McTwiggan v. Hunter*, 19 R.I. 265, 33 A. 5 (1895).

■ Article I, section 16 operates as a restraint on the extensive power of the Legislature to apportion the tax burden. *Opinion of the Justices, Wood v. Quimby*, both *supra.* The Legislature cannot constitutionally impose taxes beyond the needs of government. *Moore v. Langton*, 92 R.I. 141, 151–52, 167 A.2d 558, 563 (1961), quoted in *Garcia v. Falkenholm*, 97 R.I. 450, 455, 198 A.2d 660, 662 (1964). Nor may the

---

view under § 42–35–16 to be consistent with the scope of our review on a prerogative writ of certiorari, citing *A.T.& G., Inc. v. Zoning Board of Review of North Smithfield*, 113 R.I. 458, 462, 322 A.2d 294, 296 (1974), as controlling authority. We described the scope of certiorari review in *A.T.& G., Inc. v. Zoning Board of Review of North Smithfield*, as "limited to the allegations of error which appear in the petition for the writ." *Id.* at 462, 322 A.2d at 296. That rule does not apply, however, to a respondent who asserts legal grounds in support of a judgment other than those relied on by the lower court. In *Petition of Crepeau-Cross*, R.I.,

385 A.2d 658 (1978), we rejected the legal grounds of decision announced by the District Court but affirmed its result on alternative grounds advanced by the respondent stating, "[i]t is well settled that we will accept a lower court decision which is correct even though we do not accept the reasoning upon which it rests." 385 A.2d at 661. We shall therefore consider the taxpayers' constitutional claim for interest at this time.

8. Rhode Island Const. art. I, sec. 16, provides: "Private property shall not be taken for public uses, without just compensation."

Legislature levy a tax if it provides no benefit or protection in return. *Greenough v. Tax Assessors of Newport*, 71 R.I. 477, 488, 47 A.2d 625, 631 (1946), *aff'd*, 331 U.S. 486, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947), *reh. denied*, 332 U.S. 784, 68 S.Ct. 28, 92 L.Ed. 367 (1947); *Wood v. Quimby, supra*. In such circumstances, the Legislature illegally appropriates " 'under the name of taxation,' " property in which the state has no legitimate interest. *Opinion of the Justices*, 34 R.I. at 198, 83 A. at 6. As a result, the tax imposed is unconstitutional under art. I, sec. 16.

We have ruled that interest is an element of just compensation under art. I sec. 16. *Atlantic Refining Co. v. Director of Public Works, supra; M.S. Alper & Son, Inc. v. Director of Public Works*, 98 R.I. 154, 200 A.2d 583 (1964); *Southern New England Railway Co. v. Shuttleworth*, 38 R.I. 216, 94 A. 738 (1915). In *Atlantic Refining Co. v. Director of Public Works*, 104 R.I. at 439, 244 A.2d at 855, we stated:

> "because of the time it necessarily takes to ascertain the extent of the damages suffered by those forced to surrender their land to public use, there is invariably an interval of time between the moment when the sovereign acquires the property and the moment when payment is eventually made. In recognition of this fact, it is well settled that in order to be justly compensated for his land, the owner is entitled to an additional sum of money in the form of interest running from the time full payment ought to have

been made until the time it actually was made. The interest is, in a sense, not part of the damages for the taking but is awarded the owner for the detention of the monetary payment after it had been justly due him."

Although *Atlantic Refining Co.* discusses a condemnation award, we find its logic equally persuasive with respect to unauthorized appropriations of money. Just compensation "contemplates a simultaneous substitution of fair market value * * *" for the property taken. *M.S. Alper & Sons, Inc. v. Director of Public Works*, 98 R.I. at 157, 200 A.2d at 586. In the case of an unconstitutional tax, the right to a refund accrues at the moment of collection. As we reasoned in *Atlantic Refining Co.*, 104 R.I. at 439, 244 A.2d at 855, the owner of the collected funds is entitled to additional compensation in the form of interest "for the detention of the monetary payment after it had been justly due him." [9]

We refer to cases involving condemnation of land also to determine the rate of interest constituting just compensation for purposes of art. I, sec. 16. In *DiMarzio v. Providence Redevelopment Agency*, 92 R.I. 7, 8–9, 165 A.2d 716, 716–17 (1960), we ruled that "in the absence of any specific statutory provision covering interest, a person whose property has been condemned is entitled to interest at the statutory rate * *." *See Atlantic Refining Co.*, 104 R.I. at 442, 244 A.2d at 856. Thus, we look to G.L.1956 (1969 Reenactment) § 6–26–1 [10] to provide

---

**9.** The recent decision in *LaSalle National Bank v. Rosewell*, 604 F.2d 530 (7th Cir. 1979), *cert. granted*, —— U.S. ——, 100 S.Ct. 1310, 63 L.Ed.2d 758 (1980), lends support to our determination that payment of interest is a necessary component of just compensation. In *LaSalle National Bank v. Rosewell*, the court ruled that 28 U.S.C. § 1341, the Tax Injunction Act, did not bar a suit brought under 42 U.S.C. § 1983, by an Illinois taxpayer who sought relief from an alleged overassessment of local real property taxes. The court found for purposes of the act that Illinois did not provide a "plain, speedy, and efficient" remedy because it required payment of contested taxes under protest but failed to pay interest on sums refunded. The court concluded that the present use of " 'money is itself a thing of value * * *.' "

*Id.* at 536 (quoting from *Procter & Gamble Distributing Co. v. Sherman*, 2 F.2d 165, 166 (S.D.N.Y.1924)). Failure to compensate taxpayers for loss of that value rendered the Illinois tax-grievance procedure an inadequate remedy for the wrong inflicted. *Id.* Although the ruling in *LaSalle National Bank v. Rosewell* does not control the questions of state law involved in this case, we consider its discussion of interest as a necessary element of full compensation for taxes paid under protest instructive. *See* Case Comment, *Federal Injunctive Relief in State Tax Cases: LaSalle v. Rosewell*, 93 Harv.L.Rev. 1016, 1023 (1980).

**10.** General Laws 1956 (1969 Reenactment) § 6–26–1 provides for a flat rate of 6 percent per annum.

the rate of interest applicable in proceedings to recover taxes imposed unconstitutionally.

### B.

Although our previous decisions discuss only legislative exercises of the taxing power, their reasoning with respect to art. I, sec. 16 extends also to certain administrative acts. The tax administrator derives his authority to assess and collect taxes from the Legislature. *See Ewing v. Tax Assessors of Jamestown*, 104 R.I. 630, 634, 247 A.2d 850, 853 (1968). He therefore cannot use his delegated powers to assess and collect taxes that the Legislature could not lawfully impose. An official who collects taxes beyond the lawful reach of the Legislature "takes" it within the meaning of art. I, sec. 16.[11]

We are not faced, however, with collection of taxes that the Legislature could not have lawfully imposed. The Legislature could have taxed the transfer to the Watch Tower under §§ 44–22–1(a) and 44–22–7. It chose instead, by enactment of §§ 44–22–1(b) and 44–22–11(1), to exempt the Watch Tower from taxation under those provisions. The issue is, therefore, whether a tax administrator who fails to apply a statutory exemption from a validly imposed tax "takes" private property within the meaning of art. I, sec. 16.

#### 1.

The administrator cannot alter or amend tax legislation under the guise of administrative interpretation. *The Herald Press, Inc. v. Norberg*, R.I., 405 A.2d 1171 (1979); *Statewide Multiple Listing Service, Inc. v. Norberg*, R.I., 392 A.2d 371 (1978); *Petrarca v. Tax Administrator*, 113 R.I. 449, 322 A.2d 621 (1974). He must, therefore, apply the tax laws according to the statutory scheme for distribution of the general tax burden. Administrative imposition of a tax on property exempted from taxation necessarily results in malapportionment of that tax. *See The St. Clare Home v. Donnelly*, 117 R.I. 464, 468, 368 A.2d 1214, 1217 (1977). In such circumstances, the administrator exceeds his mandate to assess and collect taxes according to statute. He, in effect, appropriates private property that the Legislature has seen fit to exempt from taxation.

We consider administrative malapportionment of taxes analogous to legislative imposition of an unconstitutional tax for purposes of art. I, sec. 16. The Legislature, by exempting certain entities from taxation, expresses its judgment that such entities shall not be taxed to meet the fiscal needs of state government. Administrative failure to apply exemptions, in effect, results in collection of taxes that exceed the government's fiscal needs as determined by the Legislature. Had the Legislature failed to provide in § 44–23–33 for refund of administratively imposed unfair, illegal, and excessive estate and transfer taxes imposed by the administrator, there is little doubt that art. I, sec. 16 would have required refund of all such unauthorized taxes.

We conclude, therefore, that art. I, sec. 16 protects statutorily exempted entities against administrative malapportionment of taxes. Remaining to be considered is under what circumstances administrative malapportionment of taxes constitutes a "taking" requiring an award of interest to afford "just compensation" under art. I, sec. 16.

#### 2.

The administrator has two responsibilities when applying tax legislation: (1) he must first determine what tax the Legislature intended, and (2) he must then accord taxpayers every legislative exemption and deduction from that tax. *The*

11. In *United States v. Lee*, 106 U.S. 196, 218–222, 1 S.Ct. 240, 259–61, 27 L.Ed. 171, 181–82 (1882), the United States Supreme Court reached a similar conclusion with respect to the just compensation clause of U.S.Const., amend. V. *See Larson v. Domestic and For-* *eign Commerce Corp.*, 337 U.S. 682, 696–97, 69 S.Ct. 1457, 1464–65, 93 L.Ed. 1628, 1639–40 (1949) and *Malone v. Bowdoin*, 369 U.S. 643, 647–48, 82 S.Ct. 980, 983–84, 8 L.Ed.2d 168, 171 (1961).

*Herald Press, Inc. v. Norberg*, 405 A.2d at 1177. An art. I, sec. 16 analysis of an administrative appropriation must begin, therefore, with an examination of the controlling tax statutes. The administrator must resolve questions of law and fact to apply a particular tax consistently with legislative intent. His determinations of law are not binding on the reviewing court; they "may be reviewed to determine what the law is and its applicability to the facts." *Narragansett Wire Co. v. Norberg*, R.I., 376 A.2d 1, 6 (1977). *See Flather v. Norberg*, R.I., 377 A.2d 225, 227, n. 2 (1977). If the administrator relies on fairly debatable legal judgments to impose a tax, a subsequent judicial reversal will not give rise to a constitutional claim under art. I, sec. 16. In such a case, the statute that he applies will be either ambiguous on its face or in its application to a particular set of facts. The taxes assessed and collected in such circumstances are not clearly malapportioned until a judicial interpretation of legislative intent is rendered.

■ If a tax statute is reasonably susceptible of only one interpretation, however, the administrator must apply it to effectuate express legislative intent. *Statewide Multiple Listing Service, Inc. v. Norberg, supra; Brier Manufacturing Co. v. Norberg*, R.I., 377 A.2d 345 (1977). He cannot lawfully substitute his judgment for that of the Legislature under the guise of statutory interpretation. *The Herald Press, Inc. v. Norberg; Statewide Multiple Listing Service Inc. v. Norberg*, both *supra*. He therefore abuses his delegated authority if he interprets or applies tax legislation without regard to clear statutory directives. In such a case, the administrator arbitrarily appropriates property that at the time of imposition was statutorily exempted from taxation.

■ He similarly abuses his authority if he bases a particular assessment, when the law is clear, on findings of fact unsupported in the record by legally competent evidence. *See Millerick v. Fascio*, R.I., 384 A.2d 601, 603 (1978). In his role as trier of fact, the administrator is required to examine and weigh evidence impartially. *See The Herald Press, Inc. v. Norberg, supra.* He cannot use his factfinding power to defeat a statutory exemption. If he relies on unsupported findings of fact to declare entities taxable that statutorily are exempted from taxation, he imposes a tax contrary to the will of the Legislature.

■ We conclude therefore that administrative imposition of a tax on a statutorily exempted entity will give rise to a claim under art. I, sec. 16 in two instances:

1. In the area of statutory interpretation, the tax administrator exercises his authority arbitrarily when his interpretation of a statute defeats unambiguous legislative intent by imposing a tax on an entity that Legislature clearly intended to exempt from that tax.

2. The tax administrator, in his capacity as finder of fact, exercises his authority arbitrarily when he makes findings unsupported by evidence and imposes a tax on an entity clearly exempted from that tax by statute.

In such circumstances, the arbitrary exercise of the tax administrator's delegated powers results in a taking of private property that requires just compensation under art. I, sec. 16. We hold therefore that the taxpayers are entitled to interest on their refund if the administrator arbitrarily imposed estate and transfer taxes on the decedent's gift to the Watch Tower.

### C.

Applying the principles discussed above [12] to our review of the administrator's "Final Decision" reveals that he arbitrarily im-

---

12. Contrary to the assertions of the dissent, we are not concerned here with the merits of the administrator's "Final Decision." Rather, we examine his "Final Decision" in light of our analysis of R.I.Const., art. I, sec. 16 to determine whether he taxed decedent's legacy to the Watch Tower arbitrarily, so that we may then determine whether the taxpayers are entitled to interest on their refund. We also note that the administrator's "Final Decision" is part of the record certified to this court by the Superior Court.

posed estate and transfer taxes on decedent's gift to the Watch Tower. He purported to rely on §§ 44–22–1(b) and 44–22–11(1) to declare the Watch Tower a nonexempt organization. We consider those provisions identical for this analysis because § 44–22–1(b) grants the same exemption from the 1-percent estate tax that § 44–22–11(1) accords from the transfer tax. Sections 44–22–1(b) and 44–22–11(1) each provide in pertinent part:

"[All] property or interests transferred to any corporation, association, or institution located in Rhode Island which is exempt from taxation by charter under the laws of this state; or to any corporation, association, or institution located outside this state, which if located within this state, would be exempt as aforesaid, provided the state of domicile of such corporation, association, or institution allows a reciprocal exemption to any similar Rhode Island corporation, association, or institution * * *."

Sections 44–22–1(b) and 44–22–11(1) require the administrator to undertake a two-step analysis to determine the taxable status of nonresident entities. He must examine the laws of this state first to determine whether Rhode Island would exempt the entity if located here. If not, he must tax the entity without reference to the law of its state of domicile. If the administrator determines, however, that Rhode Island would exempt the entity from taxation, he must then look to the law of its state of domicile. The entity's state of domicile must provide a reciprocal exemption for similar Rhode Island entities before he may

exempt the nonresident entity from our estate and transfer taxes.

The administrator began his analysis of the Watch Tower's taxable status with a discussion of exemption laws in force in Pennsylvania—the Watch Tower's state of domicile. He properly ascertained that Pennsylvania must exempt similar Rhode Island organizations, assuming their existence, as the predicate for granting the Watch Tower tax-exempt status in Rhode Island. The relevant Pennsylvania statute, Pa.Stat.Ann. tit. 72, § 2485–302 (Purdon) provides in part:

"Transfers of property to or for the use of any of the following are exempt from inheritance tax:

(1) Any corporation, unincorporated association or society organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation * * *." [13]

After citing the controlling Rhode Island and Pennsylvania statutes, the administrator looked to a New York Court of Appeals case. *Watchtower Bible and Tract Society of New York, Inc. v. Lewisohn*, 35 N.Y.2d 92, 315 N.E.2d 801, 358 N.Y.S.2d 757 (1974). In *Lewisohn*, the New York court considered the status of the Watch Tower for purposes of New York Real Property Tax Law § 421.[14] New York City had enacted

13. We note that the administrator actually relied on Pa.Stat.Ann. tit. 72, § 2301.1 (Purdon) in his "Final Decision." The Pennsylvania Legislature repealed and replaced § 2301.1 with Pa. Stat.Ann. tit. 72, § 2485–302 in 1961. The error is harmless because the statutes are identical in all respects material to his decision.

14. New York Real Prop. Tax Law § 421(b) (McKinney) provides as follows:

"(b) Real Property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes,

or for two or more such purposes, but which is organized or conducted exclusively for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association, or by another such corporation or association as hereinafter provided, shall be exempt from taxation; provided, however, that such property shall be taxable by any municipal corporation within which it is located if the governing

an ordinance under authority conferred by § 421. The city ordinance directed the defendant to tax real property of Bible, tract, and missionary societies described in § 421. He relied on the ordinance to tax real property belonging to the Watch Tower in New York City. As construed by the New York Court of Appeals, § 421 permits city governments to tax Bible, tract, and missionary societies only if such societies are not organized for exclusively religious purposes. The court found that although the Watch Tower published and disseminated Bibles and tracts, its purposes were exclusively religious. The New York court therefore ordered the defendant to remove the Watch Tower's real property from city tax rolls.

■ The administrator ignored the result in *Lewisohn*, but gathered apparently from § 421 that a Bible and tract society may be organized for nonreligious purposes. He properly determined that such societies must be "organized and operated exclusively for religious * * * purposes" to qualify for an exemption in Pennsylvania. Pa. Stat.Ann. tit. 72, § 2485–302. The administrator subsequently declared the Watch Tower nonexempt, finding impliedly that it was not organized exclusively for religious purposes.

■ Our review of the record indicates that the administrator's finding is wholly unsupported by evidence. The taxpayers introduced ample evidence to establish that the Watch Tower was organized exclusively for religious purposes. No evidence appears of record that contradicts or discredits taxpayers' evidence. The taxpayers' evidence appearing uncontroverted on the face of the record bound the administrator as trier of fact unless he articulated reasons for rejecting it. *Correia v. Norberg*, R.I., 391 A.2d 94, 98 (1978); *Milliken v. Milliken*, R.I., 390 A.2d 934, 936 (1978). The administrator, however, rejected the taxpayers' evidence without discussion. He also disregarded the holding in *Lewisohn* —the only case he cited on this issue.[15] He found instead that as "a publisher and bible society of major proportions" the Watch Tower is organized "for a taxable purpose."

■ We conclude, therefore, that the imposition of taxes by the administrator in this case falls within the second class of cases discussed above that give rise to claims under art. I, sec. 16. The administrator found that the Watch Tower was not organized exclusively for religious purposes, although the record contains no evidentiary support for that finding. He then relied on that finding to impose estate and transfer taxes on the legacy to the Watch Tower. In light of the evidence of record and the language of §§ 44–22–1(b) and 44–22–11(1), collection of the estate and transfer taxes constituted a taking within the meaning of R.I.Const., art. I, sec. 16, entitling the taxpayers to a refund with interest.

■ We hold that the taxpayers are entitled to an award of interest at the rate of 6 percent per annum on their refund of estate and transfer taxes. We must modify the Superior Court judgment because the justice awarded interest at an 8-percent annual rate. We therefore grant the petition for certiorari insofar as we correct the rate of interest stated in the Superior Court judgment.

board of such municipal corporation, after public hearing, adopts a local law, ordinance or resolution so providing. None of the following subdivisions of this section providing that certain properties shall be exempt under circumstances or conditions set forth in such subdivisions shall exempt such property from taxation by a municipal corporation whose governing board has adopted a local law, ordinance or resolution providing that such property shall be taxable pursuant to this paragraph (b)."

15. We recognize that the New York Court of Appeals' conclusion concerning the Watch Tower is an affirmance of a factual determination not binding on the administrator. The administrator was free to make his own findings of fact based on competent evidence before him. There is, however, no evidence in the record to support his conclusion that the Watch Tower would be a taxable entity in Pennsylvania. Absent such evidence, and with no explanation stating why the taxpayers' evidence was unsatisfactory, we consider the New York court's reasoned application of the "exclusively religious" standard—the same standard outlined in § 2485–302—suggestive of a result here.

The petition for certiorari is granted to modify the judgment of the Superior Court, the record certified to this court is ordered returned with our direction to correct the judgment for the taxpayers to state an award of interest at 6 percent per annum.

KELLEHER, Justice, dissenting.

This dissent is directed solely to that portion of the opinion of my colleague, Mrs. Justice Murray, which sets forth the conclusion that there has been a "taking" within the meaning of art. I, sec. 16, of the Rhode Island Constitution. The disagreement is based upon my firm belief that such a result undermines our past pronouncements defining the exact parameters of review available in this court under the Administrative Procedures Act (APA), to wit, G.L. 1956, (1977 Reenactment) chapter 35 of title 42. Furthermore, even if I were to assume that the majority's consideration of the taxpayer's efforts to obtain an exemption is warranted by Rhode Island's APA, I could not concur with the view that the administrative denial was arbitrary and amounted to a "taking."

This case is before us pursuant to the discretionary writ of certiorari set forth in G.L.1956 (1977 Reenactment) § 42–35–16. On numerous occasions, we have consistently held that the limited nature of review afforded by this writ enables us to determine solely whether there is any competent evidence to support the findings of the trial justice. We do not examine credibility or the strength of evidence. *Herald Press, Inc. v. Norberg*, R.I., 405 A.2d 1171, 1177 (1979); *Statewide Multiple Listing Service, Inc. v. Norberg*, R.I., 392 A.2d 371, 372 (1978); *Manual J. Furtado, Inc. v. Sarkas*, 118 R.I. 218, 222, 373 A.2d 169, 171–72 (1977).

Here, the petitioner is the tax administrator who requested that we fault the trial justice's imposition of interest, and indeed, in an earlier portion of their opinion, the majority take exception to the legal reasoning of the trial justice's decision to award interest. The majority take a further impermissible step, however, in looking to the actions of the tax administrator in the original hearing to find an alternate legal theory in support of the imposition of interest. Although there have been times when this court on appeal in civil matters has faulted the trial justice's reasoning but sustained his conclusion, the right-but-for-a-different-reason rationale of those cases [1] has no place within the legislative scheme of judicial review specified by our APA. The General Assembly never intended, when it adopted the certiorari review provisions of § 42–35–16, that this court would serve as the primary source of judicial review of administrative actions subject to the APA.

The result reached by the majority, while it may please the plaintiff executors, certainly does violence to the legislative command that our appellate function should be restricted to a review of the trial court's conclusions concerning what occurred at the agency level.

Until today interest was a statutory creature. *Foster v. Quigley*, 94 R.I. 217, 179 A.2d 494 (1962); *St. Germain v. Lapp*, 72 R.I. 42, 48 A.2d 181 (1946). Today, the majority in a masterful display of judicial inventiveness have usurped the responsibility of the General Assembly by applying a broad brush and painting the administrator's original findings with a "taking" color. I believe, however, that when this color is viewed in light of the record and this court's past pronouncements, the paint soon flakes away.

In order to support its contention that the assessment made by the administrator was arbitrary and thus constitutes a "taking" of private property for public use, the majority rely on a portion of a 1912 advisory opinion given by the justices of this court in response to a variety of questions propounded by the Governor. The subject of the inquiry concerned an act that created the so-called Metropolitan Park District and al-

1. *Souza v. O'Hara*, R.I., 395 A.2d 1060 (1978); *Bric's Market, Inc. v. State*, 105 R.I. 572, 253 A.2d 590 (1969); *Lancia v. Grossman's of* *Rhode Island, Inc.*, 100 R.I. 407, 216 A.2d 517 (1966).

lowed three court-appointed commissioners to determine annually the amount of assessment that each municipality within the district would have to pay to the state. The proceeds of the assessment were to be used to reimburse the state for the money it had spent in the development of public parks and other recreational facilities within the district. *Opinion of the Justices of the Supreme Court to the Governor in the Matter of Metropolitan Park Loan*, 34 R.I. 191, 83 A. 3 (1912).

The reference to the "just compensation" mandate as being the equivalent of a guarantee against "illegal exactions disguised under the name of taxation" is part of a larger excerpt from 27 *American and English Encyclopedia of Law* 585–86 (2d ed. 1904) that the justices incorporated verbatim as part of their response to the executive inquiry. When one analyzes the cases cited in the encyclopedia to support the "illegal exactions" verbiage, it becomes apparent that every case concerns a constitutional challenge to a legislative branch of government for its enactment of a statute authorizing the imposition of a tax. All of the courts referred to concede that a legislatively authorized "taxing" might well result in a "taking."

Up to the moment, I have been unable to discover a case in which observations made by a court considering the constitutionality of a taxing statute have supported the actions taken here by the majority in their award of interest to the taxpayer. Perhaps there will come a time when a tax administrator's actions are so "arbitrary and flagrant" that a judicial tribunal will conclude that there has been a "taking." Although the majority seemingly would find a "taking" upon discovery of almost any administrative slip-up in the tax division, apparently a "taking" occurs only if the administrator acts "arbitrarily" in construing a statute or making findings that are not supported by the evidence. In my opinion, however, a "taking" did not occur in Rhode Island on May 25, 1976, when the tax administrator, after reviewing the record of the administrative hearing, adopted the findings made by the hearing officer.

The hearing was held in Providence on July 31, 1975. The record indicates that Rathbun Willard, a resident of Scituate, died on December 10, 1968. The executors filed an inventory of the assets of the estate with the State Division of Taxation. Schedule C of the inventory lists tangible personal property that was then valued at $1,581,407.29. In his decision, the hearing officer found as a fact that "Watch Tower, a Pennsylvania corporation, is the publishing arm of the Jehovah Witnesses, publishing millions of magazines and books during the course of the year." He also described "the Jehovah Witnesses" as "a religious organization and prime distributor of the publications of Watch Tower." As he proceeded to make his determination, the hearing officer did not ignore the result in *Watchtower Bible and Tract Society of New York, Inc. v. Lewisohn*, 35 N.Y.2d 92, 315 N.E.2d 801, 358 N.Y.S.2d 757 (1974), but he remarked that the "courts of New York do not seem to share a uniform opinion on the interpretation of this statute." In taking this position, he relied on two cases, *Swedenborg Foundation, Inc. v. Lewisohn*, 48 App.Div.2d 798, 369 N.Y.S.2d 429 (1975), and *American Bible Society v. Lewisohn*, 48 App.Div.2d 308, 369 N.Y.S.2d 725 (1975), wherein the Appellate Division of the New York Supreme Court ruled that neither the foundation nor the society qualified for the tax exemption given the Watch Tower.

Admittedly, New York's *Watchtower* holding is totally immaterial in this controversy. The crucial statutes are the exemptions listed in either the Rhode Island or the Pennsylvania law. The hearing officer in his own way did make a determination about whether the Watch Tower, as he viewed it, qualified under the Rhode Island law. In refusing to give an exempt status to the residuary legatee, the hearing officer pointed out

"that the printing and publishing arm of one of the largest religious organizations in the State of Rhode Island is assessed taxes on both its corporate entity and its property, i. e., *The Providence Visitor*."

The officer was referring, of course, to the Providence Visitor's publisher, the Roman Catholic Diocese of Providence.

Although the hearing officer referred to an out-of-date Pennsylvania statute, he was right on target as he discussed the need to satisfy the "test" that the residuary legatee "operated exclusively" for religious or charitable purposes. Many taxpayers who are bothered as to where one draws the line between evangelism and entrepreneurism will certainly applaud the hearing officer's invocation of the well-settled principle calling for the strict construction of statutes granting tax exemptions when the burden of proving the exemption is on the claimant. I believe that at one point in this controversy the administrator's refusal to give the Watch Tower Bible and Tract Society of Pennsylvania tax-exempt status came about because the hearing officer described the Pennsylvania unit as the publishing arm of the Jehovah's Witnesses. One of the attorneys who was active in the New York litigation testified at the hearing. He depicted the Watch Tower Bible and Tract Society of New York, Inc., as "the publishing arm." Another witness, however, was the secretary-treasurer of the Pennsylvania Watch Tower entity. He described his organization as the "ecclesiastical governing agency for the congregations of Jehovah's Witnesses." Later, he explained that the Witnesses, in making their household visits, employed many study aids, including the Watch Tower magazine that, according to the secretary-treasurer, is published by the Watch Tower Bible and Tract Society of Pennsylvania. Admitted into evidence at this point was a Watch Tower magazine which contained on page 2 a notation in support of this statement.

In this atmosphere of conflicting testimony concerning the true nature of the Watch Tower Bible and Tract Society of Pennsylvania, the hearing officer concluded that the Pennsylvania unit was the publishing arm of the Jehovah's Witnesses. From this

premise he went on to compare the tax status of this Pennsylvania branch with that of the Providence Visitor and justifiably concluded that the Pennsylvania unit should likewise be denied tax-exempt status. Even if his original premise may have been flawed, this is hardly the type of error which is sufficiently arbitrary to amount to a "taking." I would imagine that even the majority would concede that there is no guarantee that any hearing officer, trial judge, or appellate judge has been endowed with the gift of infallibility.

If my colleagues had engaged in the limited review specified by § 42–35–16, the executors would still have a remedy. If they wished, they could follow the path taken by the taxpayer in *Sterling Shoe Co. v. Norberg*, 411 F.Supp. 128 (D.R.I.1976), and invoked the provisions of the Tax Injunction Act of 1937, 28 U.S.C.A. § 1341 (1976). While Sterling did not prevail upon its claim that our taxing statute failed to afford a simple, speedy, and efficient remedy, who knows what can happen, especially in light of the holding in *LaSalle National Bank v. Rosewell*, 604 F.2d 530 (7th Cir. 1979).[2] If the taxpayer were to succeed, it would not be the first time that there is a difference of opinion expressed between the federal and state judicial branches, but at least there would be a hearing during which all points of view could be explored.

The majority have left the administrator in the position of a general who has won the battle but has lost the war. Unlike the general, the administrator has, however, never been afforded the opportunity to defend his position. For the reasons hereinbefore stated, I would sustain the administrator's appeal.

---

**2.** The United States Supreme Court has granted the petition for certiorari which was filed by the treasurer and the tax assessor of Cook County. The appeal is scheduled to be heard this fall. *See Rosewell v. LaSalle National Bank,* —— U.S. ——, 100 S.Ct. 1310, 63 L.Ed.2d 758 (1980).