DECISION
Before the Court is an appeal from a decision of the Probate Court of the City of Newport (Probate Court). Jurisdiction in this Court is pursuant to G.L. 1956 § 33-23-1.
 Facts/Travel
In August, 1987, Anna Cantore, then an elderly resident of Newport, moved in with one of her two daughters, Mary A. Chaves. Immediately before moving into Mrs. Chaves' home, Mrs. Cantore executed a general Power of Attorney in favor of Mrs. Chaves. Mrs. Cantore stayed with Mrs. Chaves until August, 1994, at which time she moved to a nursing home. Prior to moving in with Mrs. Chaves, Mrs. Cantore lived in a two family home that she owned on Memorial Boulevard in Newport.
During Mrs. Cantore's stay at her home, Mrs. Chaves managed her mother's financial affairs, which included the management of rental property located in Newport. During the stay, Mrs. Chaves did not charge Mrs. Cantore rent or board. Mrs. Chaves also did not provide Mrs. Cantore with an accounting of money expended on the management of Mrs. Cantore's property. In April, 1994, Mrs. Cantore executed a Will, in which she devised her personal property equally to her two daughters, Mrs. Chaves and Antoinette Breed. Furthermore, the Will stated that each daughter was to receive 40% of Mrs. Cantore's real property, with 20% to be held by both daughters as co-trustees of a trust, which would then convey that 20% share of the real estate to either Mrs. Chaves, if she did not submit a bill to Mrs. Cantore for caring for her, or Mrs. Breed, if Mrs. Chaves did submit a bill.
By August, 1995, Mrs. Cantore had become quite ill. Therefore, Mrs. Breed petitioned the Probate Court to name her and Mrs. Chaves as limited co-guardians of Mrs. Cantore's estate and person. Mrs. Chaves objected to the petition. The Probate Court appointed the two sisters as co-guardians, but Mrs. Chaves refused her appointment.
Mrs. Cantore died in February, 1996. Her Will was presented to probate and the two sisters were appointed co-executrices of the estate. Soon after Mrs. Cantore's death, Mrs. Breed petitioned the Probate Court for an accounting by Mrs. Chaves, claiming that $58,000.00 of the estate went unaccounted for while Mrs. Cantore was in the care of Mrs. Chaves. Mrs. Breed's petition was granted and the guardianship was left open.[1]
Over a period of four and a half years the Probate Court conducted hearings on Mrs. Breed's petition. These hearings ended up taking place. The court used an independent accountant to assist it in determining the amount of money, if any, unaccounted for. In a decision filed on December 1, 1999, the Probate Court found that $28,216.00 of the estate was unaccounted for during the period Mrs. Chaves had exclusive control over Mrs. Cantore's affairs. Thus, the court ordered Mrs. Chaves to reimburse the estate in that amount. The Probate Court also ordered Mrs. Chaves to return $5,000.00 she had billed Mrs. Cantore during her lifetime for contractor services.
Furthermore, the court determined that Mrs. Breed's prosecution of the accounting was successful. Therefore, pursuant to G.L. 1956 § 33-22-26, it ordered Mrs. Chaves to pay the independent accountant's fees, which amounted to $3,250.00. In total, Mrs. Chaves was ordered to pay back $36,466.00 to the estate.
The court also held that since it had ordered Mrs. Chaves to pay back the money that was unaccounted for and the $5,000 that she had paid herself out of Mrs. Cantore's funds for contracting services, Mrs. Chaves had not actually charged Mrs. Cantore for the care she received. Thus, the Probate Court determined that the 20% share of the real property held in trust inured to Mrs. Chaves' benefit.
Judgment was entered on January 6, 2000, ordering Mrs. Chaves to pay the $36, 466.00 within 45 days of December 1, 1999. On April 24, 2000 a Judgment Stipulation entered stating that the Judgment was satisfied.
Subsequently, both parties filed claims with the Probate Court for services rendered. The attorneys representing both parties also submitted claims for attorney's fees. Both sides objected to the other's claims. Arguments were also made to the court as to whether prejudgment interest should be added to the $36,466.00 that Mrs. Chaves was ordered to pay back to the estate.
On June 7, 2000, the Probate Court issued its decision on these outstanding issues. The court awarded both parties fiduciary fees, although Mrs. Breed received about $8,000.00 less than she requested. Mrs. Breed had requested over $17,000.00, but the court refused to award $8,000.00 of that request because it would have compensated Mrs. Breed for services performed on Mrs. Cantore's real property subsequent to her death. The court held that the real estate devised immediately upon Mrs. Cantore's death, therefore it could not award Mrs. Breed fees for those services. The court also found both parties' attorney's fees to be reasonable, but reduced the amounts of those fees to be paid out of the funds of the estate, because of the "apparent misdeeds of their clients." Mrs. Chaves misdeeds being the lack of accounting and the self payment of $5,000. Mrs. Breed's misdeed being a straying into "self interest, when she alleged different and varying amounts unaccounted[.]" Probate Court Decision of June 7, page 3.
Lastly, the Probate Court refused to add prejudgment interest to the $36,466.00 it had ordered Mrs. Chaves to pay to the estate. The court reasoned that the prejudgment interest statute, G.L. 1956 § 9-21-10, applies to damages, and that here, the court had not awarded damages, but had merely ordered Mrs. Chaves to return assets to the estate. Decision of June 7, page 3.
Mrs. Breed filed a timely appeal of the June 7, 2000 decision. Mrs. Breed takes issue with three of the court's determinations in the decision. She argues: (1) that the court erred in awarding attorney's fees to Mrs. Chaves attorney and not awarding her own attorney the full amount of his bill; (2) that the court erred in not compensating her for the administration of Mrs. Cantore's real estate; and (3) that the court should have added prejudgment interest to the sum that Mrs. Chaves was ordered to repay to the estate.
 Standard of Review
This Court's review of the Probate Court's decision is governed by G.L. 1956 § 33-23-1, which provides, in part: "An appeal under this chapter is not an appeal on error but is to be heard de novo[.]" However, the statute also provides "the findings of fact and/or decisions of the probate court may be given as much weight and deference as the superior court deems appropriate[.]" § 33-23-1(d).
 Attorneys' Fees
In its June 7, 2000 decision, the Probate Court awarded attorneys' fees to be paid out of the estate to counsel for both parties. While the court found that both attorneys made reasonable requests for their fees, it did not require the estate to pay either attorney the complete amount requested. With respect to Mrs. Chaves' attorney's request for $19,277.00 in fees, the court awarded $16,277.00 from the estate, indicating that the $3,000.00 balance should be paid to the attorney by Mrs. Chaves herself. With respect to Mrs. Breed's attorney's request for $13,615.00, the court ordered the estate to pay $12,615.00, again indicating the balance should be made up by the client.
Mrs. Breed argues that Mrs. Chaves' attorney should not have been awarded any fees from the estate for litigation costs. Mrs. Breed claims that Mrs. Chaves' attorney was solely furthering Mrs. Chaves' interests, not the interests of the estate, when he represented Mrs. Chaves in the accounting action, and therefore his actions were not necessary for the protection of the estate. Likewise, because her actions were taken solely for the protection of the estate, Mrs. Breed argues that her attorney's fees should be awarded in full.
G.L. 1956 § 33-18-19 reads, in pertinent part:
 "Any legally interested person instituting a suit or proceeding shall, in case of failure to prosecute the suit successfully, be entitled to no costs, and shall be personally liable to the adverse party for costs, and in no event shall those legally interested persons . . . be entitled to any reimbursement for the expenses, unless the proceeding or defense . . . shall be found . . . to have been necessary for the protection of the estate[.]"
On page 3 of the Probate Court's June 7, 2000 decision, the court states that: "if Mrs. Breed, in her zeal, strayed into self interest, when she alleged different and varying amounts unaccounted, there should also be an adjustment [to her attorney's fees]." Thereafter, the court did adjust her attorney's fees by $1,000.00. In light of that adjustment, the court clearly found that Mrs. Breed did stray into self interest when she alleged "different and varying amounts unaccounted." As a result of the varied allegations, Mrs. Chaves was forced to spend funds on an attorney to defend herself against the allegations. The court found that this defense was necessary for the protection of the estate, as Mrs. Breed had claimed that $58,000 (and at one point as much as $107,630.00) was unaccounted for, when the actual amount was $28,216.00.
This Court will exercise its discretion in accepting the finding of the Probate Court that Mrs. Chaves' defense of the accounting petition was necessary for the protection of the estate. The Probate Court was intimately familiar with the facts in this matter, having heard it for a period of four years. It is quite reasonable to find that Mrs. Chaves was protecting the interest of the estate when she defended herself against what the court found to be partially self-interested accusations of having let higher sums of money go unaccounted for. Thus, this Court will not modify the award of attorney's fees to Mrs. Chaves' attorney. Likewise, this Court will not increase the $11,615.00 awarded to Mrs. Breed's attorney.
 Mrs. Breed's fiduciary fees
Mrs. Breed also argues that she should receive $8,302.00 more in fiduciary fees than the Probate Court awarded her, as compensation for the maintenance of Mrs. Cantore's former real property subsequent to her death. Mrs. Breed urges this Court to either: (1) recognize that the guardianship was kept open in order to care for the real property owned by the estate; or (2) exercise its equitable jurisdiction and award her the money, based on the fact that Mrs. Breed alone kept up the property and received no contribution from her sister.
The Probate Court refused to award the fees for maintenance performed subsequent to Mrs. Cantore's death because it found that the property vested immediately upon the death. See Decision of June 7, 2000, pages 1 and 2. It is well settled law that "title to real property vests immediately upon a testator's death in the devisees." DiCristofaro v. Beaudry, 113 R.I. 313, 319, 320 A.2d 597, 601 (1974). In applying that law, the Probate Court found that the estate no longer had an interest in the real property in question, even in light of the seemingly contradictory language the court used when it referred to the real estate as keeping the guardianship open. See Decision of June 7, 2000, page 1. Clearly, if the estate no longer owns the real estate, Mrs. Breed could not have been acting in her role as guardian when she maintained the property. Therefore, notwithstanding the guardianship reference made on page 1 of the decision, the Probate Court correctly applied the law of this state regarding ownership when it refused to award Mrs. Breed the extra $8,302.00.
However, Mrs. Breed asks this Court to do what is equitable and award her the $8,302.00 for her efforts, which benefited Mrs. Chaves, since she ended up holding 60% interest in the property. Mrs. Breed argues that if this Court does not make the award, Mrs. Chaves will end up receiving $8,302.00 worth of services from Mrs. Breed for free (or at least 60% of those services).
Although Mrs. Breed's allegations suggest an unfair distribution of time and effort spent on the real property, this Court cannot award her the $8,302.00 in guardian fees for the maintenance of the real property subsequent to Mrs. Cantore's death. Harsh as the result may be, this Court cannot ignore the controlling law in this matter, which provides for immediate vesting of real property upon the testator's death. In light of the fact that the real property was immediately divested, it is legally impossible to consider Mrs. Breed's maintenance of the real estate as management of the estate's assets. This Court cannot award the guardian of an estate fees for the maintenance of property that the estate no longer owned.[2] Therefore, the Probate Court's award of executor fees to Mrs. Breed in the amount of $9,140.00 is affirmed.
 Prejudgment Interest
Lastly, Mrs. Breed argues that the Probate Court erred when it did not add prejudgment interest to the $36,466.00 it ordered Mrs. Chaves to pay to the estate of Mrs. Cantore. She argues that the prejudgment interest statute, G.L. § 9-21-10, is a broad statute, calling for interest to be attached on any judgment for pecuniary damages that have not been excepted from the statute. Therefore, according to Mrs. Breed, because probate judgments are not excepted, prejudgment interest must be attached.
Mrs. Chaves argues that 9-21-10 does not apply to probate court judgments. She further argues that it would be impossible to ascertain exactly when funds became unaccounted for, thus forcing this Court or the Probate Court to unfairly speculate on a time in order to impose interest. In Gott v. Norberg, our Supreme Court held that it construes9-21-10 to apply only to actions sounding in tort or contract.417 A.2d 1352, 1357 (R.I. 1980). The Gott court looked at the history of the statute, explaining that prior to 1976 the statute provided for interest only "(i)n causes of action and actions for damages to the person or to real and personal estate in which verdict is rendered or a decision made for pecuniary damages . . ." Id. In 1976, the legislature amended the statute to provide for interest in "any civil action in which verdict is rendered or a decision made for pecuniary damages . . ." See id. (citing 9-21-10 as amended by P.L. 1966, ch. 1, § 10). The Gott court believed that the 1976 amendment was a reaction to courts determining that the statute only provided interest in tort actions. Thus, the amendment served to "equalize the right of tort and contract litigants to collect interest on judgments." Id.
In determining that the amendment was limited in scope to merely adding contract actions to tort actions, the court stated that it must "construe statutes that award interest on judgments strictly." Id.
Although 9-21-10 was amended in 1986, subsequent to the Gott decision, there is nothing in the amendment (which addressed medical malpractice actions) to suggest that it would allow interest to be attached to the $36,466.00 paid by Mrs. Chaves in this matter. If the Legislature did not agree with the court's holding in Gott, it would have amended the statute in order to reflect that it applies to actions besides those sounding in contract or tort. It did not do so. Therefore, this Court will follow the Supreme Court's strict interpretation of 9-21-10, which has not become outdated through legislative action, and hold that prejudgment interest cannot be added to the Probate Court's judgment in the accounting action.
After a de novo review of the entire record, this Court affirms the June 7, 2000 decision of the Probate Court in its entirety.
Counsel shall prepare the appropriate order.
[1] Mrs. Breed argues that the guardianship was left open not only for purposes of prosecuting the accounting petition, but also for continual management of the estate's assets. Mrs. Chaves disputes this claim, arguing that the guardianship was left open only to hold $90,000.00 in the guardianship account and for the prosecution of the accounting petition.
[2] This Court does not suggest that there are not other avenues the Mrs. Breed may pursue in order to be compensated for her work on the real property, an example of such being a partition action.