WILLIAM H. McTWIGGAN *et al. vs.* GEORGE F. HUNTER, Collector of Taxes of the Town of East Providence, *et al.*

Pub. Stat. R. I. cap. 43, § 6, of the assessment of taxes, requires the assessors to give but one notice before assessing a tax, viz., the notice in which they specify the time and place of their meeting and notify every person liable to taxation to bring in to them an account of his ratable estate.

Pub. Stat. R. I. cap. 43, § 6, does not contemplate that after having given notice to those liable to taxation to bring in their accounts at the time prescribed in the notice, and after having made up the assessment list required by § 8, the assessors shall hold a final meeting for the purpose of assessing the tax, so that the taxpayers may have an opportunity to inspect the assessment list, and be heard upon their objections, before the list has been signed and deposited in the office of the town clerk.

The purpose of Pub. Stat. R. I. cap. 43, § 7, which provides that every person bringing in the account of his ratable estate required by § 6 shall make oath to the same before some one of the assessors, and that whoever neglects or refuses to bring in such account if overtaxed shall have no remedy therefor, is to compel everyone liable to be taxed personally to carry in his account to the assessors : And such person may then be examined by the assessors as to his account while he at the same time will have an opportunity to be heard thereon.

The power to exempt from taxation is included in the power to tax, and can only be exercised by the General Assembly within the limitations of the Constitution, or by the several municipal bodies of the State in pursuance of lawful authority granted to them by the General Assembly.

The electors of a town qualified to vote on a proposition to impose a tax, at an annual town meeting held April 11, 1892, accepted an offer made to the town to convey to it certain lands for highway purposes in consideration that the town would exempt from taxation for ten years a building to be erected in the town for manufacturing purposes and machinery to be placed therein, and at the same meeting passed a resolution authorizing the town council to exempt such property from taxation in accordance with any acts of the General Assembly that might be passed authorizing such exemption. Subsequently the General Assembly passed an act (Pub. Laws R. I. cap. 1088, of May 21, 1892,) authorizing the electors of any town or city qualified to vote on a proposition to impose a tax to exempt or authorize the town council or city council of such town or city to exempt from taxation for a period not exceeding ten years such manufacturing property as may thereafter be located in said town or city in consequence of such exemption. Neither the electors of the town nor the town council took any action in pursuance of the statute, but the assessors of taxes omitted from the assessment the property referred to in the resolution passed at the town meeting of April 11, 1892.

*Held,* that the omission of the property from the assessment by the assessors was unauthorized and illegal.

*Held,* further, that the omission of the property from the assessment could not be justified on the ground of a contract made by the town in pursuance of which land had been conveyed to the town for highway purposes.

*Query,* whether Pub. Laws R. I. cap. 1088, of May 21, 1892, is not repugnant to
  Article 1, § 2, of the Constitution of Rhode Island which declares that the
  public burdens ought to be fairly distributed.
The omission of property liable to taxation from the assessment will not vitiate
  the whole tax where such omission was made without any intention on the
  part of the assessors to do a wrong or commit a fraud, but arose solely from a
  mistake of law or fact or error of judgment.

BILL IN EQUITY to enjoin the collection of a town tax.

*October* 28, 1895. MATTESON, C. J. This is a bill to en-
join the collection of a tax because, as alleged, its assessment
was illegal.

The first ground upon which it is claimed that the assess-
ment was illegal is that the assessors gave no notice of the
time and place of their meeting, as required by law. The
provisions of the statutes relating to the assessment of taxes,
so far as material to the present inquiry, are contained in
Pub. Stat. R. I. cap. 43, §§ 6, 7, 8, 18, and are as follows :

"SEC. 6. Before assessing any tax, the assessors shall
post up printed notices of the time and place of their meet-
ing, in three public places in the town, for three weeks next
preceding the time of such meeting, and advertise in some
newspaper published in the town, if any there be, for the
same space of time. Such notices shall require every person
and body corporate liable to taxation to bring in to the asses-
sors a true and exact account of all his ratable estate, de-
scribing and specifying the value of every parcel of his real
and personal estate, at such time as they may prescribe.

"SEC. 7. Every person bringing in any such account
shall make oath before some one of the assessors that the
account by him exhibited contains to the best of his knowl-
edge and belief a true and full account and valuation of all
his ratable estate ; and whoever neglects or refuses to bring
in such account if overtaxed shall have no remedy therefor.

"SEC. 8. The assessors shall make a list containing the
true, full and fair cash value of all the ratable estate in the
town, placing real and personal estate in separate columns,
and distinguishing those who give in an account from those
who do not, and shall apportion the tax accordingly."

"SEC. 18. The assessors, on completing the assessment

as aforesaid, shall date and sign the same and deposit it in the office of the town clerk."

Before proceeding to the assessment, the assessors posted up printed notices in three or more public places in the town, for three weeks next preceding the time of their meeting, as specified in the notices, which were in the following form :

"TOWN OF EAST PROVIDENCE.

1894.

*Assessors' Notice.*

The undersigned, Assessors of Taxes of the Town of East Providence, R. I., for the year 1894, hereby give notice that they will be in session at the Town Hall, East Providence Centre, Tuesday, August 21 ; at Riverside, in the Engine House, Wednesday, August 22 ; and at the Town Clerk's office, Thursday and Friday, August 23 and 24, from 2 to 4 o'clock, P. M., on each of said days, for the purpose of receiving from persons and bodies corporate, liable to taxation in said Town of East Providence, true and exact accounts of their ratable estates."

(Here follows in the notice Pub. Stat. R. I. cap. 43, § 7, quoted above.)

"Transfers of real estate from the records will close on Tuesday, July 31, 1894, and all real estate will be taxed to the persons or bodies corporate in whose name it stands at the close of the day.

JOSEPH J. LUTHER  ⎫
WILLIAM L. SUNDERLAND ⎬ *Assessors.*
TIMOTHY L. RISLEY  ⎭

EAST PROVIDENCE, June 26, 1894."

There was no newspaper published in East Providence during the three weeks next preceding the time of their meeting, as specified in the notices, and therefore the assessors, though not required by the statute, gave further notice of the time and place of their meeting by advertisement during that period in the Evening Bulletin and Evening Telegram, newspapers published in Providence.

The theory of the complainants is that § 6 requires the giving of two notices, (1) a notice to every person and body corporate, liable to taxation, to carry in a true account of his or its ratable estate, and (2) a notice of the time and place of the meeting of the assessors for the purpose of assessing the tax. Their contention is that the statute contemplates that, after having given notice to those liable to taxation to bring in their accounts within the time to be prescribed by the notice, and after having made up the list required by § 8, the assessors shall hold a final meeting, of which they shall give notice in the manner specified, so that the taxpayers shall have an opportunity to inspect the assessment roll, and if they consider themselves unfairly taxed may object and be heard by the assessors upon their objections, before the assessment has been signed and deposited by them in the Town Clerk's office, as provided in § 18.

We do not think that this is the view to be taken of the statute. Section 6 is the only section relating to notice. It does not provide in terms for two distinct notices. It simply directs the assessors, before proceeding in the assessment, to give notice, in the manner specified, of the time and place of their meeting, and then goes on to provide that the notices posted up, beside specifying the time and place of meeting, shall require every person and body corporate, liable to taxation, to bring in to the assessors an account, &c. It is the evident purpose of the statute to compel every one liable to be taxed to personally carry in an account to the assessors, since the requirement is that he shall make oath to the account before one of the assessors. Upon the account so rendered he may be examined by the assessors; he at the same time will have an opportunity to be heard upon it, and a basis will be afforded the assessors on which to make the assessment. If a person liable to taxation neglects or refuses to carry in his account he waives his right to be heard, and, under § 7, if overtaxed is without remedy. We do not see that such a procedure is in any way repugnant, as intimated by the complainants, to Article 5 of the amendments to the Constitution of the United States, that no person shall

be deprived of life, liberty or property without due process of law.

We do not think that the assessment was invalid for want of notice.

The second ground upon which it is contended that the assessment was illegal is the alleged wilful and intentional omission and exemption by the assessors of property of the Grosvenordale Company. The respondents, though conceding that property of the Grosvenordale Company was intentionally omitted from the assessment, deny that the omission was wilful and intentional in the sense that it was fraudulent and corrupt, and seek to justify it by reference to certain records and deeds mentioned in, and copies of which are annexed to, the answer. From these, it appears that the Grosvenordale Company made a proposition in writing, dated April 9, 1892, to the town, to convey, or procure to be conveyed to it, certain lands for highway purposes and certain loam and gravel for making streets, and to erect a two-story brick building, 184 feet in length by 60 feet wide, for manufacturing purposes, on certain land in the town, being lots numbered 6, 7, 8 and 9 on the Grosvenor plat, in consideration that the town would exempt the improvements from taxation for ten years, and cause the land conveyed to it to be laid out as public highways, and the highways to be constructed in the manner and within the time specified in the proposition; that at the annual town meeting, on April 11, 1892, the electors of the town, qualified to vote on a proposition to impose a tax, accepted the proposition and passed a resolution authorizing the town council to exempt from taxation the brick building proposed to be erected and the machinery, stock, furniture and fixtures to be kept therein, in accordance with the provisions of any acts of the General Assembly that might be passed authorizing such exemption; that, at the same meeting, a further resolution was passed authorizing the town council, until the next annual election, to exempt from taxation, for a period not exceeding ten years, manufacturing or other ratable property, not already located in the town, which might be located

there in consequence of such exemption, in accordance with the provisions of any act of the General Assembly which might be passed authorizing such exemption; that by deeds, dated April 28, 1892, and recorded in the land records of the town May 14, 1892, the lands proposed to be conveyed to the town for highway purposes were conveyed to it by the owners of such lands, according the terms of the proposition, which deeds were, by vote of the town council on May 17, 1892, accepted and ordered to be recorded.

On May 21, 1892, the General Assembly passed the following act: (Pub. Laws R. I. cap. 1088.)

"SECTION 1.    The electors of any town or city qualified to vote on a proposition to impose a tax, when legally assembled, may vote to exempt, or may authorize the town or city council of such town or city, for a period not exceeding one year, to exempt from taxation for a period not exceeding ten years, such manufacturing property as may hereafter be located in said town or city in consequence of such exemption, and the land on which such property is located.

"SEC. 2.    Property so exempted shall not, during such period of exemption, be liable to taxation while such property is used for the purposes for which it was so located.

"SEC. 3.    All acts and parts of acts inconsistent herewith are hereby repealed.

"SEC. 4.    This act shall take effect on and after its passage."

The power to exempt property from taxation is the converse of the power to determine what property shall be the subject of taxation; the selection of certain property for the purpose of taxation being the exclusion or exemption of that which is not selected.    It is, therefore, included necessarily in the power to tax, which resides in the State alone, and consequently can be exercised only by the General Assembly, representing the sovereign power of the State, acting within the limitation of the Constitution, or by the several cities, towns or other municipal bodies, in pursuance of lawful authority granted to them by the General Assembly.    Cooley on Taxation, 2d ed. 200.    This was evidently the idea of the

framer of the resolutions passed by the town, which do not purport to exempt any property from taxation, but simply confer on the town council authority to grant exemptions in accordance with the provisions of any act or acts of the General Assembly which might be passed authorizing the exemption. Pub. Laws R. I. cap. 1088, was doubtless passed for the purpose of enabling the making of the exemption. But it does not purport to be retroactive, and, conceding the competency of the General Assembly to pass the act, which, in view of the limitation contained in Article 1, § 2, of the Constitution, that the public burdens ought to be fairly distributed, we think is at least susceptible of doubt, it does not appear that either the electors of the town, qualified to vote on a proposition to impose a tax, or the town council took any action prior to the assessment, in pursuance of that statute. We are of the opinion, therefore, that the attempt to justify the omission of the property from the assessment, on the ground that the exemption was authorized and therefore legal, fails.

The respondents seek further to justify the omission of the property from assessment on the ground that the town, by the acceptance of the proposition of the Grosvenordale Company and the benefits derived from it, became bound in good faith and equity to exempt the property from taxation, and contend that a court of equity will not disregard a subsisting contract and set it aside, until one or the other of the parties to it has offered to rescind it and has restored or tendered back the consideration received from the other; that the complainants, and the other taxpayers of the town in whose behalf they file the bill, have derived the benefits arising from the conveyance of the streets to the town for highway purposes, and cannot ask a court sitting in equity to say that the assessors have so erred in recognizing the contract as to render the assessment null and void; that the complainants, representing the taxpayers generally, must, before asking the interposition of equity, do what is equitable, or, in other words, before asking the court to pronounce the assessment invalid, must secure such action as will restore to the other

party to the contract the consideration which the town has received.

We do not think that the omission to include the property in the assessment can be justified on the ground of the contract. As we have already held, the exemption of the property from taxation, in the absence of constitutional legislative authority, was beyond the power of the town, and hence, in so far as such exemption entered into the contract, the contract was null and void. It did not bind the town or the complainants as taxpayers, whose rights as such would be affected by carrying it into effect; and it made no difference that the Grosvenordale Company may have acted in the belief that the town could make the contract, since it was bound to know the extent of the town's authority. *Austin* v. *Coggeshall*, 12 R. I. 329, 331 ; *Farnsworth* v. *Pawtucket*, 13 R. I. 82, 88 ; *Mathewson* v. *Hawkins*, Index QQ. 15. In the face of the fact, however, that the resolutions of the town do not purport to grant the exemption but merely authorize the town council to make it, in accordance with the provisions of such act or acts of the General Assembly as might be passed for the purpose, it seems scarcely probable that the Grosvenordale Company was not aware of the incapacity of the town to bind itself by so much of the contract as related to the exemption of the property from taxation.

Since the making of the agreement the assessors have recognized it as binding on the town, and have accordingly omitted to assess the property to which it relates. No question has been made as to the validity of such exemption until the filing of the bill in this suit. The assessors who made the present assessment omitted to assess the property in good faith, without any intention or purpose to enable the company to escape or be free from legal taxation, with the knowledge that it had been exempted by the previous boards of assessors, and in full belief of the duty of the town to exempt the property from taxation and of the validity of the exemption.

It is contended by the respondents that, as the omission to assess the property was because of the belief of the assessors

that the agreement was binding upon the town, and that the exemption was valid on that account, and was, therefore, a mistake of law, it did not vitiate the assessment as a whole, and, consequently, that the bill should be dismissed. On the other hand, the complainants, though conceding that an accidental omission of property that should be taxed will not avoid an assessment, insist that such will be the effect when the omission, as in the present case, was intentional, and that it matters not what was the belief or motive of the assessors. We do not think that the fact that the omission of the property from assessment was intentional, in the sense merely that it was not accidental, is sufficient to avoid the assessment. To have that effect the omission must be a conscious disregard of law, in such manner as to impose illegal taxes on those who are assessed. It is the conscious intention to disregard the law to the injury of others, or, in other words, an intention to do a wrong or commit a fraud which vitiates an assessment ; and when this appears, it matters not that the motive for it would otherwise have been a worthy one. Accidental omissions, or omissions arising merely from mistakes of law or fact or errors of judgment, in an honest endeavor on the part of the assessors to perform their duty, though increasing somewhat the burdens of taxpayers, will not render the assessment void. In *Weeks* v. *Milwaukee*, 10 Wis. 242, 264, it is said : "Omissions of this character, arising from mistakes of fact, erroneous computations, or errors of judgment on the part of those to whom the execution of the taxing laws is entrusted, do not necessarily vitiate the whole tax. But intentional disregard of those laws, in such manner as to impose illegal taxes upon those who are assessed, does. The first part of the rule is necessary to enable taxes to be collected at all. The execution of these laws is necessarily entrusted to men ; and men are fallible, liable to frequent mistakes of fact and errors of judgment. If such errors on the part of those who are attempting in good faith to perform their duties, should vitiate the whole tax, no tax could ever be collected. And, therefore, though they sometimes increase improperly the burdens of those pay-

ing taxes, that part of the rule which holds the tax not thereby avoided, is absolutely essential to a continuation of the government. But it seems to me clear that the other part is equally essential to the just protection of the citizen. If those executing these laws may deliberately disregard them, and assess the whole tax upon a part only of those who are liable to pay it, and have it still a legal tax, then the laws afford no protection, and the citizen is at the mercy of those officers who, by being appointed to execute the laws, would seem to be thereby placed beyond legal control." And see *Wilson* v. *Wheeler*, 55 Vt. 446, 453, 454 ; *Henry* v. *Chester*, 15 Vt. 460, 467 ; *Spear* v. *Braintree*, 24 Vt. 414, 418 ; *Dillingham* v. *Snow*, 5 Mass. 547, 558, 559 ; *Van Deventer* v. *Long Island City*, 139 N. Y. 133, 138 ; *State* v. *Platt*, 24 N. J. L. 108, 120, 121 ; *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. 1 ; *Fifield* v. *Marinette County*, 62 Wis. 532, 541 ; *Burlington & Missouri R. R. Co.* v. *Seward County*, 10 Neb. 211, 216 ; *Burlington & Missouri R. R. Co.* v. *Saline County*, 12 Neb. 396, 397 ; *People* v. *McCreery*, 34 Cal. 432, 458 ; Cooley on Taxation, 2d ed. 214, 217.

The omission to include the property in the assessment having been occasioned solely by the mistake of the assessors as to the binding effect of the agreement on the town, and not by any intentional disregard of law or other wrongful or fraudulent purpose, we are of the opinion that the assessment was not thereby avoided and, hence, that the injunction should be denied and the bill dismissed.

*Edward D. Bassett & Edward L. Mitchell*, for complainants.

*Stephen A. Cooke, Louis L. Angell & Edwin P. Allen*, for respondents.