Gerald A. OSTER et al.

v.

Leo H. TELLIER, Jr., et al.

No. 86–239–Appeal.

Supreme Court of Rhode Island.

June 27, 1988.

Joseph T. Little, East Providence, for plaintiffs.

George M. Prescott, Lincoln, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal by Lincoln taxpayers (plaintiffs) in a class action against Leo H. Tellier, Jr., tax assessor, and Claudette Paine, finance director for the town of Lincoln, Rhode Island (defendants). A Superior Court justice found that the defendants illegally assessed the tangible personal property of the members of the plaintiff class in violation of both the equal protection clause of the United States Constitution and article 1, section 2, of the Rhode Island Constitution. The trial justice held that no evidence existed to support a judgment for specific monetary damages and denied the plaintiffs' prayer for restitution. The plaintiffs appeal from that decision. We affirm the judgment of the Superior Court justice.

The plaintiff class comprises Lincoln taxpayers who own tangible personal property used in their businesses. The class representatives are Gerald A. Oster, Lawrence S. Groff, and George M. Prescott. They reside in the town of Lincoln and are partners in the law firm of Oster, Groff & Prescott, with offices located at 936 Smithfield Avenue in Lincoln. Mr. Oster has practiced law at that address for some twenty years.

The record recites that in 1979 the law firm received a notice from the then-tax assessor, Jaime Restrepo, Jr., notifying the partners of their obligation to file for the purpose of taxation an inventory of the personal property owned and utilized by the firm in the course of its practice.[1] The firm had never received such a notice before. Neither had the partners ever received such a notice regarding the taxability of nonbusiness tangible personal property. The plaintiffs intentionally failed to comply with this notice.

On May 30, 1979, plaintiffs requested a preliminary injunction, seeking to enjoin the tax assessor from making assessments against the tangible personal property of the members of plaintiff class unless assessments were also made against all other ratable tangible personal property located in defendant town of Lincoln. The plaintiffs' request for a preliminary injunction was granted, and defendants appealed. *See Oster v. Restrepo*, 448 A.2d 1268 (R.I. 1982) (*Oster I*).

In *Oster I* we held that the application for a preliminary injunction should be consolidated with a full hearing on the merits, and the case was remanded to the Superior Court with a directive that a hearing be timely held. Justice Shea, writing for the court, reasoned that the issue involved questions of law and fact that were "both substantial and complex involving constitutional and statutory interpretation. Given the gravity of the matter, the public interest involved, and the need for as full a record as possible, the need for a prompt trial on the merits is clear." 448 A.2d at 1271.

On October 28, 1982, the Superior Court complied with the mandate and conducted a hearing. The parties stipulated that the tax bills for the 1979 tax roll had been issued and collected, thus rendering plaintiffs' writ of mandamus moot. The writ sought to compel the tax assessor to assess and enter upon the tax roll all tangible personal property located in Lincoln belonging to nonresidents. The trial justice allowed the parties to submit further evi-

1. Jaime Restrepo, Jr., was replaced by Leo H. Tellier, Jr., as tax assessor for the town of Lincoln. A motion to substitute was granted pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure, permitting the substitution of a successor public officer.

dence at a subsequent hearing on the merits.

Thereafter, on January 20, 1983, plaintiffs informed the court that they rested on evidence previously produced. The defendants presented Dennis Sheehan, tax assessor for the city of Warwick, Rhode Island. His testimony was offered to demonstrate that Mr. Restrepo's method of locating and assessing tangible personal property was not dissimilar to the method employed by tax assessors in other cities and towns in Rhode Island.

On April 11, 1986, the trial justice rendered a bench decision holding that he had no basis on which to reach a different conclusion following the hearing on the merits. The trial justice agreed with the arguments advanced by plaintiffs. At prior hearings it was argued that not all tangible personal property used in conjunction with business was assessed as of December 31, 1978, and that personal property found in private homes was assessed but exempted at an amount requiring no taxes due.[2] The plaintiffs relied on G.L. 1956 (1980 Reenactment) §§ 44-3-1 and 44-5-12, which state:

"44-3-1. Real and personal property subject to taxation. —All real property in the state, and all personal property belonging to the inhabitants thereof, whether individuals, co-partnerships, or corporations, and all tangible personal property located in the state belonging to nonresidents, shall be liable to taxation unless otherwise specially provided."

"44-5-12. Assessment at full and fair cash value. —All property liable to taxation shall be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed one-hundred percent (100%), to be determined by the as-

sessors in each town or city; provided, however, that in assessing real estate which is classified as farm land, forest or open space land in accordance with [chapter 27] of this title the assessors shall consider no factors in determining the full and fair cash value of said real estate other than those which relate to said use without regard to neighborhood land use of a more intensive nature."

The town responded by arguing that a taxing authority may legitimately classify property for taxation purposes according to its use or owner. However, the Superior Court justice stated in his decision:

"The plaintiffs have proved, not only that not all of the business tangible personal property in Lincoln was assessed by the assessor as of December 31, 1978, but that this is true also of household tangible personal property. It follows that the assessments on the business personalty of the plaintiffs were violative both of the equal protection clause of the United States Constitution, and the guarantee of article 1, section 2 of the Rhode Island Constitution, requiring that the burdens of the state be fairly distributed among its citizens."

The trial justice then concluded that the assessments of December 31, 1978, upon the tangible business property of plaintiffs were illegal. However, he determined that the assessments were not void. To determine whether the assessment was void or illegal, the trial justice focused on the element of intent on the part of the tax assessor when he made the assessments in 1978.

The trial justice relied on *McTwiggan v. Hunter*, 19 R.I. 265, 33 A. 5 (1895). There it was held that an assessment is void when a tax assessor's conduct amounts to a "con-

---

2. The Superior Court justice observed that the evidence was undisputed that until this case was brought by plaintiffs, the tax assessor in Lincoln assessed "only the tangible personal property of businesses, of which he was aware, and assessed none of the tangible property in any household. His testimony on June 20, 1979, reveals an attempt on his part to comply with the preliminary injunction previously entered. He did so by obtaining the list of registered voters in the town of Lincoln, and for each address listed

thereon, he made a judgment as to who at that address might be the head of the household. As to each of such individuals, he did decide that there were household tangibles valued at $860.00. For this value he applied a 70% assessment rate, and arrived at a taxable amount of $600.00. He then applied a $600.00 exemption which resulted in no tax due." In response the justice took judicial notice of the fact that there were individuals who had not registered to vote who escaped assessment of their personalty.

scious intention to disregard the law to the injury of others, or, in other words, an intention to do a wrong or commit a fraud * * *." 19 R.I. at 273, 33 A. at 8. Absent a finding of intent, it was held that "[a]ccidental omissions, or omissions arising merely from mistakes of law or fact or errors of judgment, in an honest endeavor on the part of the assessors to perform their duty, though increasing somewhat the burdens of taxpayers, will not render the assessment void." *Id.*

Relying on the evidence and testimony, the trial justice made findings regarding the intentions of the tax assessor who had determined the assessments for both household personalty and business personalty in 1978. He found that Mr. Restrepo deliberately and intentionally exempted household items from taxation. However the trial justice concluded that "the plaintiffs failed to prove that such intentional failure constituted a conscious intention to disregard the law to the injury of others." Mr. Restrepo, the trial justice held, based his actions on methods used by his predecessors in office and on practices used in other municipalities in Rhode Island. Second, regarding the incomplete assessment of tangible business property, it was held that plaintiffs failed to prove such act to be intentional. The trial justice found that Mr. Restrepo taxed those business enterprises that he was aware of, although it was indicated that the assessor did not conduct a thorough search.

Therefore, absent proof by plaintiffs to demonstrate that Mr. Restrepo intentionally sought to commit fraud or injury or selectively to discriminate against particular businesses, the trial justice, relying on *McTwiggan,* determined that the assessment was illegal rather than void. The trial justice concluded that a consequence of the determination that the assessment on tangible business property was illegal was that the plaintiff class was taxed disproportionately.

Although the trial justice held that plaintiffs were subject to an illegal assessment and an excessive monetary obligation, he concluded that plaintiffs had failed to proffer evidence to prove the amount by which they were overassessed. Thus, plaintiffs were denied recovery. The trial justice held that plaintiffs were not entitled to a rebate of the entire tax paid because the assessment was not void but merely illegal. It was conceded that plaintiffs were obliged to pay some amount of tax, but he stated, "It has not been shown by the plaintiffs what lesser amount of tax would have been legitimately theirs to pay had the defendant assessed in accordance with the law." Accordingly the trial justice denied plaintiffs' prayer for restitution.

In response plaintiffs appeal and argue that the class is entitled to recover all taxes paid based upon assessments made as of December 31, 1978, against the tangible personal property used in conjunction with their businesses. In the alternative, plaintiffs contend that the class should recover the excess tax that was paid because not all classes of property liable to taxation were assessed at a single, uniform percentage of full and fair cash value.

We are mindful that the findings of fact of a trial justice sitting without a jury are accorded great deference and will not be disturbed unless it is demonstrated that he or she misconceived or overlooked material evidence or was otherwise clearly wrong. *Bissonnette v. Hanton City Realty Corp.,* 529 A.2d 139, 141 (R.I. 1987).

The plaintiffs argue that the assessment was made intentionally in retaliation for plaintiffs' association with unrelated litigation involving the tax assessor. We find no evidence in the record to support plaintiffs' contention. There is competent evidence to support the trial justice's ruling that Mr. Restrepo's method of assessing property was consistent with that of other tax assessors. There is no evidence before us to suggest that Mr. Restrepo's actions were a product of improper motivation. Following our independent examination of the record before us, we are satisfied with the findings made by the trial justice.

The reliance by the trial justice on *McTwiggan v. Hunter,* 19 R.I. 265, 33 A. 5 (1895), was well placed. The principles

enunciated in *McTwiggan* accord with our holding in *Picerne v. DiPrete,* 428 A.2d 1074 (R.I. 1981). There we held that "in order for us to grant relief prayed for by plaintiffs, they must show that defendants intentionally sifted them out for reassessment." *Id.* at 1077. In executing their duties, tax assessors strive for absolute equality in taxation. Concededly, inequities result in taxes that are imposed on society. Inequitable tax assessments do not necessarily result from an intentional disregard of the law. Therefore, a requisite determination must be made with regard to the intentions of the assessing authority. Thereafter, a tax assessment can be rendered void or illegal. If a tax is determined to be void, an entire rebate is appropriate. If the tax assessment is determined to be illegal, then the excessive tax paid is subject to a remittance. We believe that the trial justice properly concluded that the 1978 assessments were not void. Therefore, we hold that the trial justice appropriately denied plaintiffs a rebate of the entire tax paid.

◼︎ We turn to the alternative relief sought by plaintiffs that recovery be allowed for the excess tax that was paid because not all classes of property liable to taxation were assessed at a single, uniform percentage of full and fair cash value. The trial justice pointed out that plaintiffs did not prove what portion of the tax paid constituted an illegal or disproportionate tax. He stated, "There being no evidence upon which the court can rely to premise a judgment for a rebate of a portion of the tax paid for the year 1979, and the plaintiffs not being entitled to a rebate of the entire tax, their prayer for restitution for repayment, however denominated, is denied." Having examined the record, we find no evidence to demonstrate that an amount of damages is ascertainable.

The plaintiff argues that the decision leaves the class without a remedy, in violation of article 1, section 5, of the Rhode Island Constitution.[3] The trial justice addressed this contention and observed that plaintiffs' class had access to the court and had had an opportunity to prove its claim. He stated, "The practical impossibility of proving its claim to a rebate did not foreclose the class from receiving a remedy by way of injunction." However, the plaintiffs had, the trial justice surmised, conceded that an injunction would be nugatory since taxes assessed as of December 1978 had been billed and collected.

The plaintiffs interposed an argument that attempted to prove to a mathematical certainty the amount by which the plaintiffs' class had been overtaxed. The trial justice rejected the argument, stating that in order to apply the figures supplied by the plaintiffs, all property must have been taxed or assessed in order accurately to determine the amount paid by the plaintiff class. We cannot say that the trial justice was clearly wrong in reaching his conclusion. There is no evidence before this court to demonstrate that the trial justice could have formulated a specific monetary remedy. In the circumstances of this case and in light of the evidence available in the record, there is a sufficient basis upon which to sustain the decision of the trial justice.

Accordingly the plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

FAY, C.J., did not participate.

**3.** Article 1, section 5, of the Rhode Island Constitution provides in part:

"Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property or character. Every person ought to obtain right and justice * * * completely and without denial * * * conformably to the laws."