DECISION
Before this Court is the Summary Judgment Motion of Plaintiff, Capital Properties, Inc. The Plaintiff requests that this Court declare illegal and expunge an alleged tax assessment conducted of a parcel of its property referred to as "Parcel 2." Jurisdiction is pursuant to General Laws of Rhode Island 1956 § 44-5-26, § 44-5-27, and § 9-30-1.
 Facts/Travel of the Case
The facts and history of this case are quite extensive. Capital Properties Inc. ("CPI") first sought redress in this Court against the State and City for related matters to this lawsuit in 1992. At that time, CPI alleged that the State and City had not adequately compensated it for the portion of its land it condemned through eminent domain during the moving of the Moshassuck and Woonasquatucket Rivers. This Court held that CPI was due approximately $400,000 more than it had been paid. (Capital Properties, Inc. v. State of Rhode Island Department of Transportation, C.A. No. PM88-1654) Upon appeal, the Supreme Court found that the trial justice had applied the wrong standard in determining the fair market value of the condemned property. The Supreme Court reversed and remanded the matter back to the Superior Court for a new trial using the "comparable sales" standard of determining fair market value. (Capital Properties. Inc. v. State of Rhode Island Department of Transportation No. 92-273-Appeal) On remand in 1997, this Court held that by using the "comparable sales" standard, CPI was due an approximate $6 million dollars more than that which had been paid by the State and City, plus interest and costs. (Capital Properties. Inc. v. State of Rhode Island Department of Transportation C.A. No. 88-1654) The State appealed this award and argued for the first time on appeal that a dispute as to the contractual obligations of the State and Plaintiff and the State and the City prevented the payment of the judgment. The Supreme Court, acknowledging that they could not review what was never before the trial justice, denied and dismissed the appeal without prejudice to any party's seeking to enforce any contractual obligations that may be implicated by the enforcement of the judgment. (Capital Properties. Inc. v. State of Rhode Island Department of Transportation. No. 97-329-Appeal) A Motion for Writ of Mandamus compelling final judgment was granted ((Capital Properties. Inc. v. State of Rhode Island Department of Transportation No. PC 88-1654) and not surprisingly, appealed. The State again argued that its post-judgment defenses should be heard. The Supreme Court deferred further consideration of the appeal pending resolution of these remaining issues, and remanded the case with the order that it be consolidated with all other unresolved claims between the parties. (Capital Properties. Inc. v. State of Rhode Island Department of Transportation No. 98-394-Appeal)
One of these other unresolved claims between the parties involved a claim for unpaid taxes. After this Court's remand decision in 1997 (Capital Properties. Inc. v. State of Rhode Island Department of Transportation. C.A. No. 88-1654), which found for the Plaintiff in excess of $6 million dollars, the Plaintiff received tax bills from the City indicating that its property has been reassessed at $110 per square foot, the fair market value determination of Plaintiffs property in the 1997 decision. The City also imposed back taxes based upon the reassessment for the years 1991-1995. By doing so, the City put the Plaintiff in the position of owing the City a very large sum of money. So large was this sum that, shortly thereafter, the Plaintiff received from the City a notice for sale at public auction of its property for the nonpayment of these back taxes and accrued interest. Plaintiff timely appealed these assessments to the Board of Tax Assessment Review and commenced action in the Superior Court seeking an injunction on the sale of the property and alleging the reassessment and imposition of back taxes was illegal and unconstitutional.
This action was decided in 1999 along with the other consolidated actions in Capital Properties. Inc. v. State of Rhode Island et al. (Nos. C.A. 98-6254, C.A. 88-1654, C.A. 98-2525, C.A. 97-4199, C.A. 98-5202) The Court found, inter alia, that the City essentially revalued CPI's property solely based upon the $110 per square foot condemnation value determined by the Court in C.A. No. 88-1654. The City retroactively applied the valuation for the years 1991-1995 and assessed back taxes and accrued interest. These assessment values were carried forward to the real property assessment as of December 31, 1997. The Court found the property in question was not "omitted" or "erroneously assessed" as provided for in § 44-5-23. Consequently, the Court held that the tax assessments made by the City against CPI were selective, arbitrary, and illegal. The Court stated, "[b]ecause revaluations must be carried out in an acceptable and orderly manner, selective assessments are generally held unlawful as discriminatory against the complaining taxpayer...." (Id. at 11) The Court ordered the City to expunge all real property tax assessments and reassessments based upon the $110.00 per square foot market value as determined in the condemnation proceeding and permanently enjoined the City from collecting taxes and accrued interest based upon this valuation method. The Supreme Court affirmed and adopted the lower court's decision with modifications not relevant to this action. (Capital Properties. Inc. v. State of Rhode Island et al., No. 99-324-Appeal) Thereafter, in 2000, this Court granted Plaintiffs Motion for Attorneys Fees and Denied the City's Cross-Motion to Vacate Judgment. (Capital Properties. Inc. v. State of Rhode Island et al., Nos. C.A. 97-4199, C.A. 98-5202, C.A. 99-4974, C.A. 98-6254).
The disputes between the City and the Plaintiff over this property nonetheless continue. The present lawsuit arises out of the City's acts with regard to "Parcel 2" of Plaintiff's property following the 1999 Court decision which expunged the illegal assessment of December 31, 1996 and directed the City to return the value of Plaintiffs property to the pre-1997 rate. Following the decision, the City expunged the illegal reassessment of December 31, 1996 and reduced the assessment for "Parcel 2" for the years in question from $110 to $30 per square foot, or from $10,035,100 to $2,736,800. (Plaintiffs Memorandum at 2) At the end of the 1999 year, the City increased the value of Plaintiffs "Parcel 2" from the pre-1997 rate of $30 per square foot to $75 per square foot. It then applied this valuation to the 1997-1999 tax years. The Plaintiff received no notice, other than a tax bill it received in 2000, that the value for "Parcel 2" was being changed from $30 per square foot to $75 per square foot. When the City refused the Plaintiffs request to issue a corrected bill, the Plaintiff once again sought redress in this Court by commencing the present action. Oral argument was heard on this summary judgment motion on May 25, 2001.
 The Parties' Arguments
The Plaintiff alleges the City has once again illegally assessed "Parcel 2." It argues that before a municipality may reassess a piece of real estate it is required to follow certain steps. These steps are part of a statutory scheme and they ensure that any assessment is constitutional. The steps that precede an assessment include those outlined in R.I.G.L. § 44-5-1 et seq. The Plaintiff argues the assessment in the present action was illegal because it violated the 1999 decision of the Court which directed the City to reinstate the pre-1997 assessed value of the property in place of the Court-expunged illegal assessment of December 31, 1996. According to the Plaintiff, the pre-1997 value was $30 per square foot (not $75 per square foot.) The Plaintiff argues the new assessment conducted by the City was also illegal because the City failed to properly notice the Plaintiff as required under §44-5-15.
The City argues that no new assessment of Plaintiffs property occurred. Rather, it argues, it merely applied the pre-1997 value to the Plaintiffs property as ordered by this Court. The City explains in its Memorandum:
 "It was discovered in 1997 that the assessment for ["Parcel 2"] had a 40% factor for obsolescence. A 40% factor for obsolescence means that the actual $75 per square foot assessment was reduced to 40% of this value due to obsolescence. Land does not become obsolete. Hence, when the assessments were determined by Judge Needham to be what they were prior to the $110 per square foot assessment... the [parcel] was assessed at its $75.00 per square foot value without any factor for obsolescence." Defendant's Memorandum at 2.
At the hearing, the City further explained that the 40% factor described above was supposed to have been removed upon the completion of the relocation of the Moshassuck and Woonasquatucket Rivers. Mistakenly, it was not. The City acknowledges that it recalculated the Plaintiffs taxes following this Court's 1999 decision but argues that the recalculation is merely an adjustment, based upon a formula that was already in place prior to the decision, and thus not an "assessment" requiring notice to the taxpayer. The Plaintiff counter argues that even this type of an "adjustment" would require statutory notice. Furthermore, as set forth in Plaintiffs Memorandum, the City did not remove this alleged 40% factor immediately after the Court's 1999 decision. The City initially returned the property to $30 per square foot. Thereafter, the City changed the rate for the years 1997-1999 to $75 by removing the alleged 40% obsolescence factor. This is despite the City's admission that it had discovered this 40% factor in 1997.
 Standard of Review
When a trial justice is ruling on a motion for summary judgment, the only question before him or her is whether there is a genuine issue of any material fact that must be resolved. Golderese v. Suburban Land Co.,590 A.2d 395, 396 (R.I. 1991). Summary judgment should be granted only if an examination of all the pleadings, affidavits, admissions, answers to interrogatories, and other materials, viewed in a light most favorable to the party opposing the motion, reveals no genuine issue of material fact. Nichola v. John Hancock Mutual Life Insurance Co. 471 A.2d 945, 947-48 (R.I. 1984).
"[A] litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions. Manning Auto Parts. Inc. v. Souza. 591 A.2d 34, 35 (R.I. 1991).
 Chapter 5 of Title 44
As admitted by both parties, an assessment of property for tax purposes must be conducted pursuant to statutorily mandated procedure, which includes notice of a specified nature to every person liable to taxation. This notice, as provided for in § 44-5-15, requires all persons liable to taxation to present an account of the subject property and its value before an assessment of the property is conducted. Filing this account is a condition precedent for asserting a claim based upon an assessment of taxes. Independence Square Foundation v. Booth 1999 WL 1062205 (R.I. Super.). Failure to file an account results in a waiver of one's right to be heard on the assessment value. McTwiggan v. Hunter.19 R.I. 265 (1895).
Section 44-5-15 states in pertinent part:
 "44-5-15. Notice of assessor's meeting — Notice by taxpayer of intent to bring in account. — Before assessing any valuations, the assessors shall cause printed notices of the time and place of their meeting to be posted in three (3) public places in the town, for three (3) weeks next preceding the time of their meeting, and shall advertise in some newspaper published in the town, if there are any, at least once a week for the same space of time. The notices require every person and body corporate liable to taxation to bring in to the assessors at the time they may prescribe a true and exact account of all the ratable estate owned or possessed by that person or body, describing and specifying the value of every parcel of the real and personal estated, together with the additional information that may be prescribed by the assessors relative to the ratable estate. . . . [I]n case any person or body corporate shall fail to file any intention [to file an account, that person or that body shall be deemed to have waived that person's or that body's right to file the account
Additionally, the statute mandates that similar notice be given a taxpayer when the taxing body issues back taxes. Section 44-5-23 of the statute provides that back taxes may be assessed on property which was "omitted" from taxation in an earlier assessment or was previously assessed "erroneously" or "illegally." Specifically, § 44-5-23
states:
 "44-5-23. Assessment of back taxes on real estate. — If any real estate liable to taxation in any city or town has been omitted in the assessment of any year or years and has thereby escaped taxation, or if any tax has been erroneously or illegally assessed upon any real estate liable to taxation in any city or town in any year or years, and because of the erroneous or illegal assessment the tax cannot be collected, or if paid has been recovered, the assessor of taxes of the city or town in the next annual assessment of taxes after the omission or erroneous or illegal assessment is known to him or her shall assess or reassess, as the case may be, a tax or taxes against the person or persons who were the owner or owners of the real estate in the year or years, to the same amount to which the real estate ought to have been assessed in the year or years. . . .
Section 44-5-24 provides the notice requirements for assessments of back taxes. It states in pertinent part:
 "44-5-24. Notice and procedure for collection of back taxes. — (a) The assessors of taxes shall give notice of the proposed assessment or reassessment of any real estate for any previous year or years to all persons liable to the tax in the manner provided in this chapter for the levy and assessment of taxes. The notice shall contain a general description of the real estate and state the year or years for which the real estate is liable to assessment or reassessment and the name or names of the person or persons liable to assessment or reassessment, and shall require every person so liable to bring in to the assessors a true and exact account of real estate owned by him or her in the previous year or years, describing the real estate and specifying the value of every parcel of the real estate at the time of the general assessment of property in previous year or years. . . .
In the present action, this Court finds that "Parcel 2" was neither "omitted" nor "erroneously assessed" property as those terms are defined. The term, "omitted property" as applied in the tax statutes means "property that the tax assessor has not assessed at all" as opposed to "property that the tax assessor has undervalued." Capital Properties. Inc. v. State of Rhode Island et al. at 12. (Nos. C.A. 98-6254, C.A. 88-1654, C.A. 98-2525, C.A. 97-4199, C.A. 98-5202) The term, "erroneous assessment," is defined as "an assessment that deviates from the law and is therefore invalid, and is a defect that is jurisdictional in its nature, and does not refer to the judgment of the assessing officer in fixing the amount of valuation of the property." Id at 12 citing Black's Law Dictionary (6th Ed.) It is undisputed, however, that the City had previously assessed "Parcel 2" of Plaintiffs property illegally. After this illegal assessment, the City proceeded to recalculate the rate of Plaintiffs taxes on "Parcel 2" in 1999. This new rate which was retroactively applied with the imposition of back taxes for the years 1997-1999 in place of the prior expunged illegal taxes. Therefore, this Court finds that the City conducted an assessment of Plaintiffs property in order to remedy the prior illegal assessment as provided for under § 44-5-23. As this Court previously held in Capital Properties. Inc. v. State of Rhode Island et al. (Id. at 12):
 "[T]axing statutes are to be strictly construed with doubts resolved in favor of the taxpayer... [An] "[a]ssessment proper includes valuation but valuation alone is not the assessment but instead only its most important element. [T]he term "assessment' as used in our taxing statutes carries with it a variety of meanings... [we note] the statutory language before us, to wit, [a]ny person aggrieved on any ground whatsoever by any assessment of taxes. . .,' [and] have no hesitancy in holding that within the context of [R.I.G.L.] § 44-5-26
the term "assessment' refers to the entire plan or statutory scheme for the imposition and collection of taxes, including the calculation of the rate." Id. at 11.
A recalculation of value, such as what transpired in the present action, is included within the term, "assessment." Section 44-5-24 provides that an assessment necessitated by a prior illegal assessment is just as deserving of notice as is a new assessment. It is uncontroverted that no such notice was given in the present case. The only notice the Plaintiff received to indicate a change in its taxes was its tax bill. Clearly, this is insufficient under the statute.
This Court holds that the City violated § 44-5-24 in failing to give proper notice to the Plaintiff of the assessment of "Parcel 2." The City never gave notice to "every person so liable [to taxation] to bring in to the assessors a true and exact account of real estate owned by him or her in the previous year or years, describing the real estate and specifying the value of every parcel of the real estate at the time of the general assessment of property in previous year or years. . . ." (§44-5-24) The prior tax bills mailed to the Plaintiff at the $30 rate never indicated the alleged 40% obsolescence factor. Although the factor was allegedly devised to account for the moving of the Rivers, it was not removed upon its completion. It was not until sometime in 1999 or 2000 that the City removed the 40% factor, despite the City's admission that the factor was discovered in 1997. The first time the Plaintiff learned of this alleged formula in calculating its rate was when it received its tax bill in 2000. Since this Court finds that the City acted illegally when it assessed the Plaintiffs property in 1999 at a rate more than double its previously billed rate without notice to the Plaintiff under § 44-5-24, it need not reach the issue of whether the assessment was selective, arbitrary, or discriminatory toward the Plaintiff.
In addition, this Court notes that even if the Court were to agree with the City's argument that its acts did not constitute an "assessment" per se, the doctrine of estoppel would nonetheless bar the City from increasing the Plaintiffs tax rate from $30 to $75 per square foot without notice. Despite the exclusive remedy provision of § 44-5-26, this Court may exercise its equity jurisdiction pursuant to § 44-5-27, "in a proper case." This has been interpreted to mean that the Court may exercise its equity jurisdiction where a tax case presents no adequate remedy at law. Wickes Asset Management. Inc. v. Dupuis 679 A.2d 314
(R.I. 1996). The Defendants argument that it conducted something other than an assessment would leave the Plaintiff without an adequate remedy under § 44-5-26 which provides relief for any person aggrieved on any ground whatsoever by any "assessment of taxes." (emphasis added.) Thus it would be appropriate for this Court to exercise its equity jurisdiction pursuant to § 44-5-27 in such a scenario. "Estoppel... bars a party from "raising certain rights or privileges when it would be inequitable to permit their assetion.... Estoppel involves the action of both parties, arises upon operation of law, and is dependent upon the showing of prejudicial reliance by the party asserting the theory." Atlantic View. Inc. v. Shorey. 1999 WL 710674 (R.I. Super.) Here, the Plaintiff detrimentally relied on the tax bills it received on "Parcel 2" indicating a rate of $30 per square foot without any mention of the alleged 40% factor for obsolescence. The alleged factor was not timely removed to coincide with the completion of the moving of the rivers. The City never raised the alleged factor in the 1997 lawsuit pertaining to this property. Although the City allegedly discovered the factor in 1997, it did not remove the factor at that time. Following the Court's 1999 decision, the City expunged the illegal assessment and returned the rate to $30 per square foot. Thereafter, the City decided to change the value to $75 per square foot. It was not until the Plaintiff received its tax bill in 2000 which imposed back taxes for the years 1997-1999 that Plaintiff learned of the alleged factor. Thus, even if this Court were to find the City's acts did not consitute an "assessment," the $75 would nonetheless be expunged by this Court through the doctrine of estoppel pursuant to its equity jurisdiction in § 44-5-27.
 Conclusion
Our General Laws require that a certain formality of process govern the imposition of taxes. None of these requirements were followed by the City. Plaintiffs Motion for Summary Judgment is granted. The City's assessment of $75 per square foot for "Parcel 2" is expunged. The City is directed to reduce the value for the years in question to the prior assessed value of $30 per square foot.
Counsel shall submit an appropriate order consistent with this decision.